## OYLER *v.* BOLES, WARDEN.

No. 56. Argued December 4, 1961.—Decided February 19, 1962.*

*David Ginsburg,* acting under appointment by the Court, 365 U. S. 826, argued the cause and filed a brief for petitioners.

*Together with No. 57, *Crabtree* v. *Boles, Warden,* also on certiorari to the same Court.

*George H. Mitchell,* Assistant Attorney General of West Virginia, argued the cause for respondent. With him on the brief was *C. Donald Robertson,* Attorney General. *Fred H. Caplan* entered an appearance for respondent.

Mr. Justice Clark delivered the opinion of the Court.

The petitioners in these consolidated cases are serving life sentences imposed under West Virginia's habitual criminal statute. This Act provides for a mandatory life sentence upon the third conviction "of a crime punishable by confinement in a penitentiary." [1] The increased penalty is to be invoked by an information filed by the prosecuting attorney "immediately upon conviction and before sentence." [2] Alleging that this Act had been applied without advance notice and to only a minority of those subject to its provisions, in violation respectively of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the petitioners filed separate petitions for writs of habeas corpus in the Supreme Court of Appeals of West Virginia. Both of their petitions were denied without opinion. Unlike *Chewning* v. *Cunningham, ante,* p. 443, here each of the petitioners was represented by counsel at the time he was sentenced. Finding the cases representative of the many recidivist cases that have been docketed in this Court the past few Terms, we granted certiorari. 365 U. S. 810. We now affirm the judgment in each case.

William Oyler, the petitioner in No. 56, was convicted of murder in the second degree on February 5, 1953, which offense carried a penalty of from 5 to 18 years' imprisonment. Sentence was deferred, and on February 11 his motion for a new trial was overruled. On that same date

---

[1] W. Va. Code, 1961, § 6130.

[2] W. Va. Code, 1961, § 6131.

the Prosecuting Attorney requested and was granted leave to file an information in writing alleging that Oyler was the same person who had suffered three prior convictions in Pennsylvania which were punishable by confinement in a penitentiary. After being cautioned as to the effect of such information, Oyler, accompanied by his counsel, acknowledged in open court that he was the person named in the information. The court then determined that the defendant had thrice been convicted of crimes punishable by confinement in a penitentiary and sentenced him to life imprisonment. In so doing the court indicated that the life sentence was mandatory under the statute and recommended that Oyler be paroled as soon as he was eligible. In 1960 Oyler filed a habeas corpus application in the Supreme Court of Appeals alleging a denial of due process under the Fourteenth Amendment in that he had not been given advance notice of his prosecution as a recidivist which prevented him from showing the inapplicability of the habitual criminal law. The statute was alleged to be inapplicable because he had never been *sentenced* to imprisonment in a penitentiary although he had been convicted of crimes subjecting him to the possibility of such sentence.[3] He also attacked his sentence on the equal protection ground previously set forth.

In 1957 Paul Crabtree, the petitioner in No. 57, pleaded guilty to forging a $35 check, which offense carried a penalty of from 2 to 10 years' imprisonment. Sentence was deferred, and a week later the Prosecuting Attorney informed the court that Crabtree had suffered two previous felony convictions, one in the State of Washington and one in West Virginia. The trial judge, after cautioning Crabtree of the effect of the information and

---

[3] The statute has been interpreted as requiring only that the previous convictions be such that imprisonment in a penitentiary *could have been* imposed. *State ex rel. Johnson* v. *Skeen,* 140 W. Va. 896, 87 S. E. 2d 521 (1955).

his rights under it, inquired if he was in fact the accused person. Crabtree, who had been represented by counsel throughout, admitted in open court that he was such person. Upon this admission and the accused's further statement that he had nothing more to say, the court proceeded to sentence him to life imprisonment. In 1960 Crabtree sought habeas corpus relief in the Supreme Court of Appeals claiming denial of due process because of the absence of notice which prevented him from showing he had never been convicted in Walla Walla County, Washington, as had been alleged in the information.[4] Like Oyler, he also raised the equal protection ground.

## I.

Petitioners recognize that the constitutionality of the practice of inflicting severer criminal penalties upon habitual offenders is no longer open to serious challenge;[5] however, they contend that in West Virginia such penalties are being invoked in an unconstitutional manner. It is petitioners' position that procedural due process under the Fourteenth Amendment requires notice of the habitual criminal accusation *before* the trial on the third

---

[4] The record indicates that instead of in Walla Walla Crabtree was convicted in Yakima County, Washington. At the time he was sentenced as a habitual criminal, he admitted that he had previously been sentenced to imprisonment in the State of Washington for a term of 20 years.

[5] *E. g., Moore* v. *Missouri,* 159 U. S. 673 (1895). West Virginia's statute is a carryover from the laws of Virginia, Va. Code, 1860, c. 199, §§ 25–26, and became its law when West Virginia was organized as a separate State. Since that time it has remained basically the same, save for a 1943 procedural amendment which provided that the statute should be invoked by information filed after conviction rather than by allegation in the indictment upon which the subject was being prosecuted for a substantive offense. In 1912 this Court upheld the constitutionality of the statute. *Graham* v. *West Virginia,* 224 U. S. 616 (1912).

offense or at least in time to afford a reasonable opportunity to meet the recidivist charge.

Even though an habitual criminal charge does not state a separate offense, the determination of whether one is an habitual criminal is "essentially independent" of the determination of guilt on the underlying substantive offense. *Chandler* v. *Fretag*, 348 U. S. 3, 8 (1954). Thus, although the habitual criminal issue may be combined with the trial of the felony charge, "it is a distinct issue, and it may appropriately be the subject of separate determination." *Graham* v. *West Virginia*, 224 U. S. 616, 625 (1912). If West Virginia chooses to handle the matter as two separate proceedings, due process does not require advance notice that the trial on the substantive offense will be followed by an habitual criminal proceeding.[6] See *Graham* v. *West Virginia, supra.*

Nevertheless, a defendant must receive reasonable notice and an opportunity to be heard relative to the recidivist charge even if due process does not require that notice be given prior to the trial on the substantive offense. Such requirements are implicit within our decisions in *Chewning* v. *Cunningham, supra; Reynolds* v. *Cochran*, 365 U. S. 525 (1961); *Chandler* v. *Fretag, supra.* Although these cases were specifically concerned with the right to assistance of counsel, it would have been an idle accomplishment to say that due process requires counsel but not the right to reasonable notice and opportunity to be heard.

As interpreted by its highest court, West Virginia's recidivist statute does not require the State to notify the

---

[6] Any other rule would place a difficult burden on the imposition of a recidivist penalty. Although the fact of prior conviction is within the knowledge of the defendant, often this knowledge does not come home to the prosecutor until after the trial, and in many cases the prior convictions are not discovered until the defendant reaches the penitentiary.

defendant prior to trial on the substantive offense that information of his prior convictions will be presented in the event he is found guilty.[7] Thus notice of the State's invocation of the statute is first brought home to the accused when, after conviction on the substantive offense but before sentencing, the information is read to him in open court as was done here. At this point petitioners were required to plead to the information. The statute expressly provides for a jury trial on the issue of identity if the accused either denies he is the person named in the information or just remains silent.[8]

But the petitioners, who were represented by counsel, neither denied they were the persons named nor remained silent. Nor did they object or seek a continuance on the ground that they had not received adequate notice and needed more time to determine how to respond with respect to the issue of their identity. Rather, both petitioners rendered further inquiry along this line unnecessary by their acknowledgments in open court that they were the same persons who had previously been convicted. In such circumstances the petitioners are in no position now to assert that they were not given a fair opportunity to respond to the allegations as to their identity.

They assert, however, that they would have raised other defenses if they had been given adequate notice of the recidivist charges. It is, of course, true that identity is not the only issue presented in a recidivist proceeding, for, as pointed out by Mr. Justice Hughes (later Chief Justice) when this Court first reviewed West Virginia's habitual criminal law, this statute contemplates valid convictions which have not been subsequently nullified. *Graham* v. *West Virginia, supra.* A list of the more obvious issues

---

[7] *West Virginia* v. *Blankenship*, 137 W. Va. 1, 69 S. E. 2d 398 (1952).

[8] W. Va. Code, 1961, § 6131.

would also include such matters as whether the previous convictions are of the character contemplated by West Virginia's statute and whether the required procedure has been followed in invoking it. Indeed, we may assume that any infirmities in the prior convictions open to collateral attack could have been reached in the recidivist proceedings, either because the state law so permits [9] or due process so requires. But this is a question we need not and do not decide, for neither the petitioners nor their counsel attempted during the recidivist proceedings to raise the issues which they now seek to raise or, indeed, any other issues. They were not, therefore, denied the right to do so. The petitioners' claim that they were deprived of due process because of inadequate opportunity to contest the habitual criminal accusation must be rejected in these cases. Each of the petitioners had a lawyer at his side, and neither the petitioners nor their counsel sought in any way to raise any matters in defense or intimated that a continuance was needed to investigate the existence of any possible defense. On the contrary, the record clearly shows that both petitioners personally and through their lawyers conceded the applicability of the law's sanctions to the circumstances of their cases.

## II.

Petitioners also claim they were denied the equal protection of law guaranteed by the Fourteenth Amendment. In his petition for a writ of habeas corpus to the Supreme Court of Appeals of West Virginia, Oyler stated:

"Petitioner was discriminated against as an Habitual Criminal in that from January, 1940, to

---

[9] The fact that the statute expressly provides for a jury trial on the issue of identity and is silent as to how other issues are to be determined does not foreclose the raising of issues other than identity. This is especially clear in the case of legal issues, such as the petitioners now raise, where a jury trial would be inappropriate.

June, 1955, there were six men sentenced in the Taylor County Circuit Court who were subject to prosecution as Habitual offenders, Petitioner was the only man thus sentenced during this period. It is a matter of record that the five men who were not prosecuted as Habitual Criminals during this period, all had three or more felony convictions and sentences as adults, and Petitioner's former convictions were a result of Juvenile Court actions.

.        .        .        .        .

"#5. The Petitioner was discriminated against by selective use of a mandatory State Statute, in that 904 men who were known offenders throughout the State of West Virginia were not sentenced as required by the mandatory Statutes, Chapter 61, Article 11, Sections 18 and 19 of the Code. Equal Protection and Equal Justice was [*sic*] denied."

Statistical data based on prison records were appended to the petition to support the latter allegation. Crabtree in his petition included similar statistical support and alleged:

"The said Statute are [*sic*] administered and applied in such a manner as to be in violation of Equal Protection and Equal Justice therefor in conflict with the Fourteenth Amendment to the Constitution of the United States."

Thus petitioners' contention is that the habitual criminal statute imposes a mandatory duty on the prosecuting authorities to seek the severer penalty against all persons coming within the statutory standards but that it is done only in a minority of cases.[10] This, petitioners

---

[10] The denial of relief by West Virginia's highest court may have involved the determination that the statute, like its counterpart § 6260, *infra*, note 11, is not mandatory. Such an interpretation would be binding upon this Court. However, we need not inquire into this point.

argue, denies equal protection to those persons against whom the heavier penalty is enforced. We note that it is not stated whether the failure to proceed against other three-time offenders was due to lack of knowledge of the prior offenses on the part of the prosecutors or was the result of a deliberate policy of proceeding only in a certain class of cases or against specific persons. The statistics merely show that according to penitentiary records a high percentage of those subject to the law have not been proceeded against. There is no indication that these records of previous convictions, which may not have been compiled until after the three-time offenders had reached the penitentiary, were available to the prosecutors.[11] Hence the allegations set out no more than a failure to prosecute others because of a lack of knowledge of their prior offenses. This does not deny equal protection due petitioners under the Fourteenth Amendment. See *Sanders* v. *Waters,* 199 F. 2d 317 (C. A. 10th Cir. 1952); *Oregon* v. *Hicks,* 213 Ore. 619, 325 P. 2d 794 (1958).

Moreover, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged. *Oregon* v. *Hicks, supra;* cf. *Snowden* v. *Hughes,* 321 U. S. 1 (1944); *Yick Wo* v. *Hopkins,* 118 U. S. 356 (1886) (by implication).

The other points raised by petitioners, such as the misstatement of the Washington county in which Crabtree

---

[11] After prisoners are confined in the penitentiary, the warden is granted discretion as to the invocation of the severer penalty. W. Va. Code, 1961, § 6260. Thus the failure to invoke the penalty in the cases cited by petitioners may reflect the exercise of such discretion.

was convicted and the fact that Oyler actually served in a Pennsylvania correctional home rather than a penitentiary, all involve state questions with which we are not concerned. Since the highest court of West Virginia handed down no opinion, we do not know what questions its judgment foreclosed. If any remain open, our judgment would not affect a test of them in appropriate state proceedings.

*Affirmed.*

MR. JUSTICE HARLAN, concurring.

I join the Court's opinion in *Oyler* v. *Boles* and *Crabtree* v. *Boles,* Nos. 56 and 57, and concur in the result in *Chewning* v. *Cunningham,* No. 63, *ante,* p. 443.

In my view, the issues decided in *Oyler* and *Crabtree,* on the one hand, and in *Chewning,* on the other, represent opposite sides of the same coin. Since their interrelationship does not appear from the opinions of the Court, and since I cannot agree with the grounds of decision stated in *Chewning,* I file this separate opinion.

The statutes of both Virginia and West Virginia provide for enhanced punishment of multiple offenders. Apparently under the practice of neither State is the alleged recidivist given advance notice, either before the trial for his latest offense or after that trial but before sentencing, of the charges that are made in the multiple-offense accusation. It is not until he appears in open court and hears the prosecutor's information read to him that the accused learns on which convictions it is that the State relies in support of its demand for an increased sentence. And it is then and there that he must plead and state what his defense is, if he has any. This procedure was followed in each of the present cases.

For an individual unrepresented by counsel, this is surely too precipitous a procedure to satisfy the standards of fairness required of state courts by the Due Process

Clause of the Fourteenth Amendment. *In re Oliver,* 333 U. S. 257, 273; see *Williams* v. *New York,* 337 U. S. 241, 245; *Cole* v. *Arkansas,* 333 U. S. 196, 201. One who is untutored in the law cannot help but be bewildered by this sudden presentation of the charges against him and the demand for an immediate response. Without suggesting that advance notice of any particular duration must be afforded, still less that such notice must be given before trial or sentencing on the latest offense, had the petitioners in *Oyler* and *Crabtree* been without the aid of counsel at their multiple-offender hearings, I would entertain grave doubts as to the constitutionality of the procedure from which their increased sentences resulted.

But the records in these cases reveal that both Oyler and Crabtree had counsel at hand when the multiple-offender hearing was held and when they were asked to plead. Counsel could have requested a continuance in order to look into the validity of the previous convictions or other possible defenses to the recidivist charges, or, if there was any doubt, to establish the identities of the previous offenders. They chose not to do so, and I think this choice forecloses the petitioners' claims that they were not given adequate notice and opportunity to prepare a defense.

In *Chewning,* however, the petitioner had no counsel. He was taken from the state penitentiary without any warning of what was in store for him, and was accused in open court of having been convicted on three prior occasions. His allegations that he requested the assignment of counsel, and that such request was denied, are not controverted.[1]

---

[1] Although petitioner did not allege in his habeas corpus petition that he was indigent at the time of the recidivist hearing, the state court apparently proceeded on the assumption that he had met the necessary poverty standard.

The Court strikes down the enhanced sentence, despite the apparent similarity between this claim and the one rejected in *Gryger* v. *Burke,* 334 U. S. 728, because it holds that various defenses that were available to Chewning under Virginia law could not have been known to or presented by a layman.   To me, the bare possibility that any of these improbable claims could have been asserted does not amount to the "exceptional circumstances" which, under existing law, *e. g., Betts* v. *Brady,* 316 U. S. 455, must be present before the Fourteenth Amendment imposes on the State a duty to provide counsel for an indigent accused in a noncapital case.   Nor do I think that a decision on these grounds can be reconciled with the holding in *Gryger,* in which the Court rejected the proposition, made by able appointed counsel, that certain contentions, much like those here suggested by the Court, could have been offered had the petitioner in that case been provided with counsel for his multiple-offender hearing.

What does distinguish this case from *Gryger,* however, and persuades me that the failure to supply assistance of counsel amounted to a denial of the procedural fairness assured by the Fourteenth Amendment, is the want of adequate notice in advance of the hearing.   In *Gryger,* a copy of the information listing the prior occasions on which the accused had been convicted was served upon him more than six and a half months before he was brought into court and asked to plead.   This was more than ample time for him to engage an attorney, request assignment of counsel, or decide for himself what line of defense to take.[2]   In the case before us now, Chewning

---

[2] It is true that a subsidiary claim in *Gryger* was that the petitioner had been denied access to legal materials which were necessary in the preparation of his defense.   But he was at least able to reflect calmly on the factual accusation being made against him and was able to plan in advance what plea to enter and how best to present his case.

was given no such opportunity. Hence I agree that the least that fairness required was that he be provided with counsel so as to be advised of the courses available to him. With no opportunity to get such advice, I do not think that his own failure to ask for a continuance has any legal significance.

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE, MR. JUSTICE BLACK, and MR. JUSTICE BRENNAN concur, dissenting.

When this Court, years ago, sustained an application of West Virginia's habitual criminal law, it said:

"Full opportunity was accorded to the prisoner to meet the allegation of former conviction. Plainly, the statute contemplated a valid conviction which had not been set aside or the consequences of which had not been removed by absolute pardon. No question as to this can be raised here, for the prisoner in no way sought to contest the validity or unimpaired character of the former judgments, but pleaded that he was not the person who had thus been convicted. On this issue he had due hearing before a jury." *Graham* v. *West Virginia,* 224 U. S. 616, 625.

The issue now presented is broader. It is what procedure used in making a charge that a person is an habitual criminal is necessary to satisfy the requirements of due process.

It is said that the record fails to show that this precise point was raised at the trial. If so, West Virginia might make that an adequate state ground, though it should be noted in passing that the court in *Rhea* v. *Edwards,* 136 F. Supp. 671, aff'd, 238 F. 2d 850, held that Tennessee's former procedure in habitual-offender cases violated due process where inadequate notice was given, even though

the accused apparently had not made this an issue at the trial. Cf. *Terminiello* v. *Chicago,* 337 U. S. 1. In these cases, however, West Virginia nowhere suggests that the issue of due process is not properly here. Rather the argument is that the requirements of due process are satisfied though the issue to be tried is restricted to the identity of the accused.

A hearing under these habitual-offender statutes requires "a judicial hearing" in order to comport with due process. *Chandler* v. *Fretag,* 348 U. S. 3, 8. The *Chandler* case held that denial of an opportunity for an accused to retain a lawyer to represent him deprives him of due process. And see *Chewning* v. *Cunningham, ante,* p. 443. If due process is to be satisfied, the full procedural panoply of the Bill of Rights, so far as notice and an opportunity to defend are concerned, must be afforded the accused. The charge of being an habitual offender is as effectively refuted by proof that there was no prior conviction or that the prior convictions were not penitentiary offenses as by proof that the accused is not the person charged with the new offense. The charge of being an habitual offender is also effectively refuted by proof that the prior convictions were not constitutionally valid as, for example, where one went to trial without a lawyer under circumstances where the appointment of someone to represent him was a requirement of due process. Denial or absence of counsel is an issue raisable on collateral attack of state judgments. *Williams* v. *Kaiser,* 323 U. S. 471. That is an inquiry that should also be permitted in these habitual-offender cases, if the procedure employed is to satisfy due process.

I mention the right of counsel merely to underline the gravity of these accusations. Unless any infirmities in the prior convictions that can be reached on collateral

attack [1] can be reached in these proceedings, the wrong done is seriously compounded.

As I understand it, the opinion of the Court concedes as much. But it affirms the convictions, even though no prior notice of the habitual-offender charge was given. Without any advance warning the present informations were filed at times when petitioners were in court in connection with their most recent convictions. The omission of formal notice has been held fatal in proceedings under recidivist statutes. *United States* v. *Claudy,* 204 F. 2d 624; *Edwards* v. *Rhea,* 238 F. 2d 850. I think reasonable prior notice is necessary to satisfy due process— notice given far enough in advance to allow for an opportunity to defend. A 9-day notice was deemed adequate in *Johnson* v. *Kansas,* 284 F. 2d 344, 345, the court saying:

> "The fundamental requisites of due process, when the statute is to be invoked, are reasonable notice and an opportunity for a full and complete hearing, with the right to the aid of competent counsel."

Respondent concedes that the notice necessary for a criminal trial was not given. Respondent indeed maintains that no notice is necessary:

> "The primary purpose for affording a defendant notice is to inform him of the charge against him, and to give him a reasonable time in which to prepare his defense. Such reason for notice does not exist in the instant cases pertaining to the application of the West Virginia habitual criminal act." Brief, p. 5.

Adequate notice of the charge under these habitual-offender statutes is as important as adequate notice

---

[1] Constitutional infirmities in criminal convictions in federal courts were declared to be "a jurisdictional bar to a valid conviction" and assertable by habeas corpus in *Johnson* v. *Zerbst,* 304 U. S. 458, 468, decided in 1938.

of the charge in an ordinary criminal trial. The notice required must be commensurate with the range and complexity of issues that concededly may be tendered. The requirements of notice, like those for a fair hearing, are basic. As we stated in *In re Oliver,* 333 U. S. 257, 273: "A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence . . . ." That case was one in which a "one-man grand jury" charged a witness with giving false and evasive testimony and summarily convicted him. Its principle is equally applicable here. Until there is a charge fairly made and fairly tried, procedural due process has not been satisfied.[2]

Unless this principle is adhered to in proceedings under these recidivist statutes, serious penalties may be imposed without any real opportunity to defend.

---

[2] Any contrary implications from *Graham* v. *West Virginia, supra,* must be read in light of the fact that the broadening reach of constitutional issues raisable by state habeas corpus followed our decision in *Johnson* v. *Zerbst, supra,* note 1. *Graham* v. *West Virginia* was decided in 1912; *Johnson* v. *Zerbst* in 1938; and the broadening attack on state court judgments on constitutional grounds in collateral proceedings started with *Chambers* v. *Florida,* 309 U. S. 227. And see *Smith* v. *O'Grady,* 312 U. S. 329; *Williams* v. *Kaiser, supra.*