John Fink MOUNTS, Appellee,

v.

Otto C. BOLES, Warden of the West Virginia State Penitentiary, Appellant.

No. 9048.

United States Court of Appeals Fourth Circuit.

Argued Oct. 3, 1963.

Decided Nov. 13, 1963.

George H. Mitchell, Asst. Atty. Gen., of West Virginia (C. Donald Robertson, Atty. Gen., of West Virginia, on brief), for Appellant.

Jeremy C. McCamic and Thomas B. Miller, Wheeling, W. Va., (Court-assigned counsel) (Arthur M. Recht, Wheeling, W. Va., Court-assigned counsel on brief), for appellee.

Before BOREMAN and J. SPENCER BELL, Circuit Judges, and WATKINS, District Judge.

J. SPENCER BELL, Circuit Judge.

The State of West Virginia appeals from a judgment of the District Court requiring the defendant Boles, Warden of the penitentiary, to release the petitioner Mounts from custody. The judgment of the District Court is affirmed.

On May 30, 1956, Mounts was convicted of unlawful and felonious wounding, the statutory penalty for which is imprisonment for an indeterminate term of from one to five years. On May 31, 1956, when the prisoner came up for sentencing, the Prosecuting Attorney filed an information reciting four previous convictions for felony and involving the Habitual Criminal Act of West Virginia, Code §§ 6130 and 6131 (1961), providing for a mandatory life sentence in such cases. The District Court made the following findings with respect to what took place at that time:

"At the arraignment for sentencing the petitioner appeared with his counsel, who had represented him at the trial. The court, for the first time, informed the petitioner of the filing of the petition and ordered the petitioner to *"Pay attention, John Fink Mounts"*. Thereafter, and without any explanation of the purposes of the petition, of the effect of the petitioner's affirmative answers to the questions about to be asked, or of his right to stand mute (which, under the statute, would entitle him to a jury trial on the issues raised by the petition), the court read the information. The information gave the section of the statute invoked, the dates of the previous convictions, the sentences and the places of confinement, but did not further enlighten the petitioner. After reading the petition, as a whole, the court then commanded *"John Mounts, you may stand up."* The court then reread each of the paragraphs having to do with the prior convictions, and asked the petitioner if he was the same person convicted of the respective offenses referred to. The petitioner made affirmative answers to each of the four questions. (Emphasis added.)

"Without more, the court then sentenced the petitioner to life imprisonment. * * * "

The question before us is whether such a proceeding complies with the requirements of due process under the Fourteenth Amendment to the Constitution.

In Spry v. Boles, 299 F.2d 332 (4 Cir. 1962) this Court held that the statutory requirement that the prisoner be "duly cautioned" was jurisdictionally mandatory under West Virginia law, citing Cox v. Boles, W.Va., 120 S.E.2d 707

(1961). We also held that if the prisoner was not duly cautioned prior to his admission of his identity and prior to the imposition of sentence then the failure to do so denied to the prisoner due process of law. In the Spry case, the contents of the information were read to the prisoner but the record was silent as to what was done to "duly caution" him of the effect of his answers. At that time, the Supreme Court of Appeals of West Virginia had not specifically interpreted the meaning of the words "duly cautioned" as used in the West Virginia statute. That Court has now held in a habeas corpus hearing that Mounts was "duly cautioned" within the meaning of the West Virginia statute. Mounts v. Boles, W.Va., 126 S.E.2d 393, *cert. denied*, 371 U.S. 930, 83 S.Ct. 298, 9 L.Ed.2d 235 (1962). *But see* the dissenting opinion of Justice Browning. The decision of the West Virginia Court was based upon the same facts as that of the District Court below. We are, of course, bound by the West Virginia Court's interpretation of the statute, but we must hold that notwithstanding the fact that the procedure below complied with the provisions of the statute it did not comply with the requirements of due process under the Fourteenth Amendment.

In Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954), in discussing the Tennessee recidivist statute, the Court pointed out that although the statute did not create a separate offense, its applicability to a defendant charged with being an habitual criminal must be determined in a judicial hearing. In that case the Court held the accused entitled to the privilege of counsel when such was requested. *Cf.* Graham v. West Virginia, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912).

 Here the accused was not informed of the grave consequences of his answers to the questions concerning his identity. We may not speculate, as the West Virginia Attorney General invites us to do, that the defendant as an experienced actor knew the consequences of his conduct[1]. The post-conviction consideration of recidivism was a judicial proceeding and essential fairness dictates that the disposition of any issue determinative of the legal power of the tribunal to inflict the additional punishment must be accompanied by adequate notice to the accused that the issue is before the Court, followed by an opportunity to be heard. United States ex rel. Collins v. Claudy, 204 F.2d 624, 628 (3 Cir. 1953). "Pay attention" and "stand up" are not adequate notice that such a grave issue is before the Court. To satisfy the *minimum requirements of fundamental fairness under the circumstances*, the prisoner should have been told of his right to admit, or to deny, or remain silent and have the issue of his identity submitted to a jury. Furthermore, he should have been told that the consequences of his admissions would be a mandatory life sentence. "Procedural fairness and regularity are of the indispensable essence of liberty." Dissenting opinion of Mr. Justice Jackson in Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 224, 73 S.Ct. 625, 635, 97 L.Ed. 956 (1953).

Affirmed.

---

1. "[W]here the conduct of a trial is involved, the guarantee of the Fourteenth Amendment is not that a just result shall have been obtained, but that the result, whatever it be, shall [have been] reached in a fair way. Procedural due process has to do with the manner of the trial; dictates that in the conduct of judicial inquiry certain fundamental rules of fairness be observed; forbids the disregard of those rules, and is not satisfied, though the result is just, if the hearing was unfair." Snyder v. Massachusetts, 291 U.S. 97, 137, 54 S.Ct. 330, 344, 78 L.Ed. 674 (1934) (dissenting opinion of Mr. Justice Roberts).