Paul Homer CRABTREE, Petitioner,

v.

Otto C. BOLES, Warden of the West Virginia State Penitentiary, Respondent.

Civ. A. No. 1324-W.

United States District Court
N. D. West Virginia,
at Wheeling.
May 19, 1964.

428

James J. Harkins, Wheeling, W. Va., for petitioner.

George H. Mitchell, Asst. Atty. Gen., for respondent.

PAUL, District Judge.

The following shall constitute the court's findings of fact, conclusions of law and opinion:

(1) Petitioner, upon his plea of guilty, was convicted of the felony of forgery November 13, 1957, in the Circuit Court of Lincoln County, West Virginia.

(2) At all proceedings in the Circuit Court of Lincoln County, Crabtree was represented by experienced and competent court-appointed counsel.

(3) After the plea of guilty and at the request of the Prosecuting Attorney made at the proceeding on November 13th, the court continued the cause for sentencing to November 20th, for the purpose of permitting the Prosecuting Attorney to prepare and file an information charging former convictions and invoking the provisions of the West Virginia recidivist statutes (W.Va.Code, Ch. 61, Art. 11, §§ 18 and 19; Michie's Code, §§ 6130 and 6131).

(4) The Prosecuting Attorney prepared such an information charging two prior convictions, one in the State of Washington and the other West Virginia, and delivered a copy of the information to petitioner's counsel several days prior to November 20th.

(5) On the morning of November 20th, petitioner's counsel reviewed the information with the petitioner in a witness room off the courtroom, and informed him that if he admitted the prior convictions charged, it would mean a life sentence.

(6) When the case was called, the court permitted the information to be filed; advised the petitioner that if he acknowledged his identity with the person named in the record of prior convictions the court "(w)as required to sentence him to further confinement as prescribed by statute on a third conviction,"; and that the petitioner was entitled to a jury trial of the issues if he did not acknowledge his identity.

(7) After these precautionary remarks, the clerk of the court, at the court's request, read the information to the petitioner, and thereafter the court inquired of the petitioner whether the allegations of former convictions were true.

(8) Petitioner acknowledged his identity with the person convicted in Washington, but at first denied the West Virginia former conviction. The court then asked the Prosecuting Attorney if he was ready to proceed with a jury trial

of the issue on the West Virginia conviction, and the Prosecuting Attorney asked for further time, remarking that he had several other records of conviction which he might want to add. At this juncture the court requested petitioner's counsel to confer with the petitioner because it appeared to the court that the petitioner did not fully understand the proceedings. The petitioner and his counsel then retired to the witness room and conferred, and petitioner was advised by his counsel that there seemed no chance successfully to refute the charge of the West Virginia conviction.

(9) Thereupon, petitioner and his counsel returned to the courtroom, the questions were again propounded, the petitioner admitted his identity with the person involved in both convictions, and the court imposed the life sentence.

(10) While a reporter was present at the sentencing proceedings, the transcript of her notes is obviously incomplete, since it contains neither the court's preliminary remarks nor the break in the proceedings occasioned by the additional conference between the petitioner and his counsel.

(11) The state of the record does not admit of findings that, prior to the arraignment, the court advised the petitioner in so many words that the consequences of his admissions would be a "mandatory life sentence" or of the fact that, under the statute, petitioner was privileged to "stand mute", which would entitle him to a jury trial.

(12) The petitioner is the same Paul Crabtree whose attack upon the constitutionality of his life sentence was considered and rejected by the Supreme Court in the consolidated cases reported *sub nom.* Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962).

 This court's findings are based upon the entire record, including the testimony introduced at the two hearings, tested by the usual rules affecting credibility and weight, and the recitals of fact in the trial court's judgment of sentence. To the latter the court did not accord "absolute verity", notwithstanding the holdings apparently requiring such treatment in Christakos v. Hunter, 161 F.2d 692 (10 Cir. 1947); Baker v. Ellis, 204 F.2d 353 (5 Cir. 1953); and Thomas v. Hunter, 153 F.2d 834 (10 Cir. 1946). This treatment resulted from the court's consideration of State ex rel. Hall v. Skeen, 136 W.Va. 805, 68 S.E.2d 683, at page 686 (1952), in which the court denied verity to a court record of a plea of guilty on direct attack, indicating, that the doctrine of verity applies only to collateral attack but gratuitously indicating that the court regarded habeas corpus as a direct attack. This court is bound by the view of the Fourth Circuit expressed in Bradley v. Smyth, 255 F.2d 45 (1958), that, regardless of State law, the federal court is not bound by the verity rule. This court did, however, accord the court records the "respect and proper deference" enjoined in Bradley, and found the petitioner's unsupported testimony, when weighed against the contrary testimony, insufficient to outweigh the record and its supporting evidence.

 The position of petitioner and his counsel that constitutional due process requires that, in any and all circumstances, the sentencing court must forewarn the accused of his right to "stand mute" and specifically advise that an affirmative answer to the critical questions would result in a "mandatory life sentence" arises from a too-literal reading of the opinion in Mounts v. Boles, 326 F.2d 186 (4 Cir. 1963). The circumstances in Mounts are a far cry from those present here. Mounts was in nowise advised of the purpose or nature of the proceeding; of his rights to have the issue determined by a jury trial; or of the serious effect of his affirmative answers. There was a complete absence of any informatory or cautionary words from the bench, and the detailing, in the opinion, of the particular omissions was for the purpose of emphasizing the total absence of "fundamental fairness under the circumstances" of the star-chamber

type of proceedings to which Mounts was subjected. In contrast to the circumstances surrounding Mounts, here we have a week's notice to the petitioner and his counsel of the impending recidivist proceedings; the delivery to petitioner's counsel, a few days in advance, of the written information; a complete explanation by petitioner's counsel to the petitioner of the nature, purpose and effect of the proceedings prior to their commencement; the explanation by the court that if Crabtree was found to be the same person as that named and described in the information, "(t)he court was required to sentence him to further confinement as prescribed by statute on a third conviction"; the advice by the court that Crabtree was entitled to have the issues tried by jury; and, finally, the according by the court of a further opportunity for petitioner and his counsel to confer before final disposition. Realistically, advice to the petitioner that he could stand mute, with the same effect as though he had given a negative answer to the questions, seems to add nothing substantial for the accused's protection. This right is inherent in every arraignment for plea, yet research has failed to disclose any case in which exposition of the right was required of the trial court.

While the issue here presented was not before the Supreme Court in Oyler, since the Court was considering only Crabtree's contentions that the notice, or lack of it, rendered the proceedings unfair, and that the unequal application of the statute by the States' courts and prosecuting officials deprived him of equal protection, yet the same court record with which we are here confronted was before the Supreme Court. That Court's findings (beginning at the bottom of page 450 of the U. S. Report [368 U.S. at page 450, 82 S.Ct. at page 503]) that Crabtree had been cautioned "of the effect of the information and his rights under it," should at least be accorded some significance as indicia that the Court found nothing unfair or violative of due process in the trial court's failure to warn Crabtree specifically that he faced life imprisonment, and to advise him that he could stand mute.

In the totality of the circumstances, the treatment accorded Crabtree is not fraught with such fundamental unfairness as to constitute a deprivation of constitutional due process.

It appearing that the petitioner is not entitled to the relief he seeks, the petition may be dismissed and this cause dropped from the docket.