**Jack Edward HARPER, Petitioner,**

**v.**

**Otto C. BOLES, Warden of the West Virginia State Penitentiary, Respondent.**

**Civ. A. No. C-67-92-E.**

United States District Court
N. D. West Virginia.

Dec. 28, 1967.

C. Donald Robertson, Atty. Gen., of West Virginia, Morton I. Taber, Asst. Atty. Gen., Charleston, W. Va., for respondent.

## MEMORANDUM

MAXWELL, Chief Judge.

The Petitioner, Jack Edward Harper, was convicted by a jury on November 29, 1962, in the Intermediate Court of Kanawha County, West Virginia, for violation of the Uniform Narcotic Drug Act. (W.Va.Code 16–8A, Michie 1966). The case was continued until December 5, 1962, while the court considered the defendant's motion to set aside the verdict. On December 5, the prosecuting attorney filed an information under the West Virginia Habitual Criminal Act charging two prior felony convictions.[1] On December 7, 1962, the Petitioner entered a plea of guilty to the matters alleged in the information and was sentenced to prison for the remainder of his natural life.

The Petitioner has exhausted his state remedies, having filed numerous petitions in the state courts, as well in this Court, prior to this petition, and now seeks habeas corpus relief under the provisions of 28 U.S.C. § 2254.

The Petitioner's first ground for relief is that he was not informed, prior to the trial on the substantive offense, that a recidivist sentence would be sought in his case if he were convicted. This issue has been ruled upon by the United States Supreme Court in Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). In the *Oyler* case, at page 452, 82 S.Ct. at page 504, the Court said: "If West Virginia chooses to handle the matter as two separate proceedings, due process does not require advance notice that the trial on the substantive offense will be followed by an habitual criminal proceeding." There is, therefore, clearly no merit to Petitioner's first claim.

A further contention is that the state trial court counsel failed to perfect an appeal within the statutory time, and because of counsel's ineffectiveness in this respect Petitioner was deprived of his right to have his case reviewed by the West Virginia Supreme Court of Appeals. In his rebuttal to Respondent's answer the Petitioner indicates this is the sole basis for claiming ineffective assistance of counsel. As a matter of law the claim is devoid of merit. The Petitioner claims that since the appeal was not taken to the Supreme Court of Appeals within eight months it was dismissed for lack of jurisdiction. The Petitioner is misinformed as to the appeal time where the conviction is in an intermediate court. As the Petitioner admits in his rebuttal, and as the record demonstrates, final judgment was entered in the Intermediate Court of Kanawha County on December 7, 1962, and a petition for writ of error was filed in the Circuit Court of Kanawha County on

---

1. In Petitioner's rebuttal it is claimed that he was not present in court when the information was filed, and submits as an exhibit a copy of the order filing the information. Even if Petitioner was not present in court for the filing of the information, such would not amount to a deprivation of his constitutional rights. There is no constitutional or jurisdictional requirement that he be physically present in court merely for the filing of the information. It *does* appear of record (Respondent's exhibit 9, appendix 10) that Petitioner was in the convicting court with counsel on December 5, 1962, when the court ruled on the motion to set aside the verdict and to award a new trial.

April 5, 1963, and was refused on May 28, 1963. A petition for writ of error was filed in the West Virginia Supreme Court of Appeals on September 27, 1963, and was refused on November 22, 1963. As Petitioner points out in his rebuttal, the date of the filing of the appeal in the Supreme Court of Appeals, September 27, 1963, was more than 8 months after the entry of the life sentence by the Intermediate Court of Kanawha County. However, since the judgment was entered by a court of limited jurisdiction, a different statutory appeal time applies from that set forth in West Virginia Code Section 58–5–4.

The time period for an appeal from a court of limited jurisdiction to the Circuit Court is set forth in West Virginia Code:

§ 58–4–4. Time for appeal or writ of error; notice of intent to file petition in criminal cases to be filed with clerk stating grounds.

No petition shall be presented to the circuit court or judge for an appeal from, or writ of error or supersedeas to, any judgment,[2] decree or order rendered or made by such court of limited jurisdiction, whether the State be a party thereto or not, which shall have been rendered or made more than four months before such petition is presented.[3]

In criminal cases no petition for appeal or writ of error shall be presented unless a notice of intent to file such petition shall have been filed with the clerk of the court in which the judgment was entered within sixty days after such judgment was entered. The notice shall fairly state the grounds for the petition without restricting the right to assign additional grounds in the petition. (1931 Code, § 58–4–4, 1965, c. 9).

If the appeal is rejected [4] by the Circuit Court the party has four months from that date to appeal to the Supreme Court of Appeals. The West Virginia Code, Section 58–4–7, reads in part:

The circuit court or the judge thereof, upon consideration of the petition, shall enter an order granting or refusing it. If the circuit court or judge deems the judgment, decree or order of such court of limited jurisdiction to be plainly right, and rejects it on that ground, and the order of rejection so states, no further petition shall afterwards be presented to the circuit court or judge for the same purpose; but in any case where the circuit court or judge rejects the petition, the petition and order of rejection, together with the record of the cause, may, within four months from the date of the order of rejection, be presented to the supreme court of appeals, or any judge thereof in vacation, for an appeal from, or writ of error or supersedeas to, such order of rejection, and, if allowed, the same proceedings may be had thereon as if the same were a petition originally from the circuit court of such county to the supreme court of appeals.[5]

---

**2.** "The sentence to life imprisonment * * * constituted the final judgment of the trial court and the four months appeal period commenced to run as of that date." State ex rel. Thompson v. Boles, W.Va., 151 S.E.2d 112, 114 (1966).

**3.** See State ex rel. Davis v. Boles, W.Va., 151 S.E.2d 110 (1966).

**4.** "If a litigant is aggrieved by an order of a circuit court rejecting his petition for appellate relief, he has four months from the date of such order to apply to this Court for relief. However, if the circuit court awards an appeal, writ of

error or supersedeas, and affirms or reverses the judgment of the court of limited jurisdiction, or reverses the judgment or decree of the court of limited jurisdiction, and retains the case for further proceedings in the circuit court, then the time in which a petition for a writ of error or appeal may be filed in this Court is eight months in conformity with the provisions of Code, 58–5–4." Kinsey v. Kinsey, 143 W.Va. 574, 103 S.E.2d 409, 412 (1958).

**5.** See State v. Davidson, 134 W.Va. 328, 59 S.E.2d 469 (1950).

■ Third claim for relief is based upon the contention that Petitioner was improperly sentenced under the recidivist statute because the Uniform Narcotic Drug Act provides for a graduated scale of punishment for subsequent convictions under the act. This Court does not find this claim to be well founded. Petitioner's prior felony convictions were not involved with a violation of the Narcotic Act. The crime of which he was convicted in 1962 was a felony, and the prosecutor proceeded against him as required by Code Sections 61–11–18, 19. There is no conflict between the two statutes as applied by the Intermediate Court of Kanawha County in the instant case. Having failed to assert a constitutional deprivation, this claim is dismissed.

The Petitioner's final claim is that he was not duly cautioned before he entered his guilty plea to the recidivist information. The crux of this contention is that he was not told of his right to remain silent and to have a jury determine his identity.[6] To determine whether this amounts to a constitutional deprivation, this Court believes a brief review of the cases in this circuit concerning "duly caution" as required by the West Virginia Statute would be helpful.

It appears that the first noteworthy case on "duly caution," for our purpose, was Spry v. Boles, 299 F.2d 332 (4th Cir. 1962).[7] This case appears to be the first case in this Circuit that makes the failure to "duly caution" a denial of due process. The *Spry* court so held at page 334:

> The act in question requires that the prisoner be "duly cautioned". We are satisfied that this requirement is mandatory and that if the petitioner was not duly cautioned prior to his admission of his identity and prior to

the imposition of the life sentence then the failure to do so denied to the prisoner "due process of law" and consequently the sentence imposed under the statute was void. This view of the law is confirmed by that of the Supreme Court of West Virginia in State ex rel. Cox v. Boles [146 W.Va. 392] 120 S.E. 707 (1961).

The *Cox* case, decided by the highest state court, held that the provisions of the Habitual Criminal Act were mandatory and if not fully complied with, the trial court lacked *jurisdiction* to impose a sentence under the recidivist statute. In the *Cox* case no information was filed and the prisoner was not duly cautioned by the court and "for that reason the circuit court was without jurisdiction to impose that additional confinement upon the petitioner * * *." 120 S.E.2d at 709. Since the court relied, apparently entirely, on the West Virginia case of Cox v. Boles, supra, the reasoning, in 1961, suggested is that if the prisoner was not duly cautioned as a matter of fact, a mandatory requirement was not complied with, and the court was without jurisdiction to impose a sentence under the Habitual Criminal Act; therefore, to impose a recidivist sentence would be a "denial of due process" of law. Assuming this to be the reasoning, the "denial of due process" rested upon a lack of jurisdiction in the state court.

The next important case in this development appears to be the key case of Mounts v. Boles, 326 F.2d 186 (1963). In that case the findings of fact as adopted by the Fourth Circuit are as follows:

> At the arraignment for sentencing the petitioner appeared with his counsel, who had represented him at the trial. The court, for the first time,

---

6. "Now the question before the Court is whether you are the same person as charged in the Information of having been previously convicted in this Court of two felonies and if you plead guilty to the Information, that is admitting that you are the same person in each event, it will be necessary for the Court to sen- tence you to the penitentiary of this state for the rest of your natural life. On the other hand you are entitled to plead not guilty and have a jury find as to your identity."

7. Criticized 65 W.Va.L.Rev. 60 (1962).

informed the petitioner of the filing of the petition and ordered the petitioner to *"Pay attention, John Fink Mounts"*. Thereafter, and without any explanation of the purposes of the petition, of the effect of the petitioner's affirmative answers to the questions about to be asked, or of his right to stand mute (which, under the statute, would entitle him to a jury trial on the issues raised by the petition), the court read the information. The information gave the section of the statute invoked, the dates of the previous convictions, the sentences and the places of confinement, but did not further enlighten the petitioner. After reading the petition, as a whole, the court then commanded *"John Mounts, you may stand up."* The court then reread each of the paragraphs having to do with the prior convictions, and asked the petitioner if he was the same person convicted of the respective offenses referred to. The petitioner made affirmative answers to each of the four questions. (Emphasis added.)

The West Virginia Supreme Court of Appeals had earlier ruled that Mounts was "duly cautioned" as required by the statute. State ex rel Mounts v. Boles, 147 W.Va. 152, 126 S.E.2d 393 (1962). It is, therefore, clear that the West Virginia court had jurisdiction as distinguished from the *Cox* case. The question before the Fourth Circuit was therefore, "whether such a proceeding complies with the requirements of due process under the Fourteenth Amendment to the Constitution." 326 F.2d at 187. The Court in discussing *Spry* said, "this Court held that the statutory requirement that the prisoner be 'duly cautioned' was jurisdictionally mandatory under West Virginia law * * *. We also held that if the prisoner was not duly cautioned prior to his admission of his identity and prior to the imposition of sentence then the failure to do so

denied to the prisoner due process of law." 326 F.2d at 188. The court then held, "we must hold that notwithstanding the fact that the procedure below complied with the provisions of the statute it did not comply with the requirements of due process under the Fourteenth Amendment." 326 F.2d at 188.

The court concluded by stating;

To satisfy the minimum requirements of fundamental fairness under the circumstances the prisoner should have been told of his right to admit, or to deny, or remain silent and have the issue of his identity submitted to a jury. Furthermore, he should have been told that the consequences of his admissions would be a mandatory life sentence. * * * 8

Therefore, while the *Spry* case first mentioned "due process" it is the *Mounts* case in which the federal constitutional protection becomes the unquestioned basis of the decision. The need for and wisdom of procedural safeguards are well stated in United States ex rel. Collins v. Claudy, 204 F.2d 624 (3rd Cir. 1953). This Court finds that the safeguard set out in *Mounts* to be complied with in recidivist proceedings is fundamental fairness. The minimum requirements set forth in the immediately preceding quotation from *Mounts* serve as guide lines and not absolute criteria.

Since the source of the minimum standard in *Mounts* is not given and there are no case citations, this Court does not determine, with certainty, where they originated. Apparently, the guide line originated from the statute itself, which reads in part;

Said court shall, before expiration of the term at which such person was convicted, cause such person or prisoner to be brought before it, and upon an information filed by the prosecuting attorney, setting forth the records of conviction and sentence, or

---

**8.** For the second conviction of a felony, the West Virginia recidivist sentence is the addition of 5 years to the statutory maximum; and for the third conviction, the sentence is for life. W.Va.Code 61–11–18 (Michie 1966).

convictions and sentences, as the case may be, and alleging the identity of the prisoner with the person named in each, shall require the prisoner to say whether he is the same person or not. If he says he is not, or remains silent, his plea, or the fact of his silence, shall be entered of record, and a jury shall be impanelled to inquire whether the prisoner is the same person mentioned in the several records. If the jury finds that he is not the same person, he shall be sentenced upon the charge of which he was convicted as provided by law; but if they find that he is the same, or after being duly cautioned if he acknowledged in open court that he is the same person, the court shall sentence him to such further confinement as is prescribed by section eighteen (§ 61–11–18) of this article on a second or third conviction as the case may be.

■ As may be noticed the three contingencies mentioned in the statute—admitting, denying or remaining silent—are the same requirements, along with the mandatory sentencing, which appear in the *Mounts* case. However, it appears to this Court that a reasonable reading of the statute does not lead to the inescapable conclusion that these contingencies be explained as a part of due cautioning, but serve to inform the court of procedural variations, depending upon the defendant's response. Such interpretation is bolstered by the opinion of the West Virginia Supreme Court of Appeals, which states "the Court has never precisely defined the term 'duly cautioned', nor is it defined in the statute." State ex rel. Combs v. Boles, 151 S.E.2d 115, 120 (1966). Since the federal court is bound by the state court's interpretation of its statute, Johnson v. Tucker, 249 F.2d 650, 651 (4th Cir. 1957); Spry v. Boles, 299 F.2d 332 (4th Cir. 1962), it would seem that this Court could rule out the possibility that the statute requires these contingencies to be a part of duly cautioning.

The question presented is whether this precise tri-part warning is required by fundamental fairness, inherent in the due process protection of the Fourteenth Amendment. Also, is this precise warning analogous to the holdings of the West Virginia courts that certain acts are mandatory, otherwise the court is without jurisdiction, or, is the true test one of fundamental fairness founded upon the totality of the circumstance, realizing that the Court's duty to caution cannot be delegated? [9] This Court believes the test set out in Mounts v. Boles, supra, is that of fundamental fairness based on the totality of the courts cautioning and that the guides set out in *Mounts* are not an absolute minimum standard. This interpretation would make the test in the federal courts similar to the test adopted by the state in State ex rel. Combs v. Boles, supra.[10]

The facts in the instant case are similar to the case of Crabtree v. Boles, 229 F.Supp. 427 (N.D.W.Va.1964), affd. 339 F.2d 22 (4th Cir. 1964). From the *Crabtree* opinion there are pertinent observations to the case now under consideration.

The position of petitioner and his counsel that constitutional due process requires that, in any and all circumstances, the sentencing court must forewarn the accused of his right to "stand mute" and specifically advise that an affirmative answer to the critical questions would result in a "mandatory life sentence" arises from a too-literal reading of the opinion in Mounts v. Boles, 326 F.2d 186 (4th Cir. 1963). The circumstances in Mounts are a far cry from those present here. Mounts was in nowise advised of the purpose or nature of the proceeding; of his rights to have the issue deter-

9. Hooker v. Boles, 346 F.2d 285 (4th Cir. 1965); State ex rel. Beckett v. Boles, 149 W.Va. 112, 138 S.E.2d 851 (1964).

10. "So long as the record reveals that the requirements of fundamental fairness have been satisfied, thereby affording the defendant due process, the requisites of the duly cautioned provision have been fulfilled." State ex rel. Combs, W.Va., 151 S.E.2d 115, 120 (1966).

mined by a jury trial; or of the serious effect of his affirmative answers. There was a complete absence of any informatory or cautionary words from the bench, and the detailing, in the opinion, of the particular omissions was for the purpose of emphasizing the total absence of "fundamental fairness under the circumstances" of the star-chamber type of proceedings to which Mounts was subjected. * * * *Realistically, advice to the petitioner that he could stand mute, with the same effect as though he had given a negative answer to the questions, seems to add nothing substantial for the accused's protection. This right is inherent in every arraignment for plea, yet research has failed to disclose any case in which exposition of the right was required of the trial court.* (Emphasis added).

In *Crabtree,* it was observed that the United States Supreme Court's findings "that Crabtree had been [duly] cautioned 'of the effect of the information and his rights under it,' should at least be accorded some significance as indicia that the Court found nothing unfair or violative of due process in the trial court's failure to warn Crabtree specifically that he faced life imprisonment,[11] and to advise him that he could stand mute."[12] In concluding *Crabtree,* it was said, "In the totality of the circumstances, the treatment accorded Crabtree is not fraught with such fundamental unfairness as to constitute a deprivation of constitutional due process." 229 F.Supp. at 430.

In affirming the district court in *Crabtree,* the Fourth Circuit Court of Appeals did not comment specifically on the necessity of cautioning a person of the right to remain silent. The court on appeal said, "In the present case, the evidence shows that the trial court had

duly cautioned the petitioner, and the petitioner knew that there were serious consequences provided under the recidivist statute." 339 F.2d at 23. From the totality of the events in *Crabtree*—the lapse of time between the time when the prisoner received a copy of the information and the arraignment thereon, the various conferences with his lawyer, the admonishment by the court—the Fourth Circuit Court of Appeals said: "From these facts, there can be no doubt that the petitioner was duly cautioned by the trial court and was given constitutional due process of law. This Court cannot reject findings of fact by the District Court in habeas corpus proceedings unless the findings are clearly erroneous. * * * Considering broadly the treatment accorded the petitioner, the Court cannot find that there was such fundamental unfairness as to amount to a deprivation of due process of law." 339 F.2d at 24. The Court concluded, "The admonition was solemn and effective, satisfying the fundamental fairness requirement of due process." Thus the *Crabtree* case in both the District Court and the Circuit Court strongly supports the view that the true test is fundamental fairness.

In Hooker v. Boles, 346 F.2d 285 (4th Cir. 1965), the court granted relief from a life sentence where it found that the petitioner had not been duly cautioned by the *Court.* Relief was granted here due to the lack of jurisdiction in the state court because of the failure to comply with one of the mandatory requirements. The result in *Hooker* parallels that reached in *Spry.* In the *Hooker* case the court succinctly stated the federal court's role in this area. "(I)t is clear that the *court* must perform the task of advising and cautioning the defendant. Once this is done the jurisdictional requirement is satisfied and the

11. The petitioner was warned that "The court was required to sentence him to further confinement as prescribed by statute on a third conviction." 229 F.Supp. at 430.

12. The issue of duly cautioning was not before the United States Supreme Court,

since that Court was considering only Crabtree's contention that notice or lack of it rendered the proceedings unfair, and that the unequal application of the statute by the state's courts and prosecuting officials deprived him of equal protection.

question then is whether the court's explanation was sufficient to satisfy the fundamental fairness requirements of due process." 346 F.2d at 287 (4th Cir. 1965).

Some doubt and question arose when in Carroll v. Boles, 347 F.2d 96 (4th Cir. 1965) the Fourth Circuit Court of Appeals stated:

> As to the minimum requirements of due process and fundamental fairness, this court stated in Mounts v. Boles, 4 Cir., 326 F.2d 186 (1963), at page 188:
>
> " * * * To satisfy the minimum requirements of fundamental fairness under the circumstances the prisoner should have been told of his right to admit, or to deny, or remain silent and have the issue of his identity submitted to a jury. Furthermore, he should have been told that the consequences of his admissions would be a mandatory life sentence. * * *
>
> These principles were recently applied in Crabtree v. Boles, 4 Cir., 339 F.2d 22 (1964), where the court concluded from the facts in that case that the prisoner had been "duly cautioned."

As related above, this Court does not believe these standards were applied as an absolute minimum in the *Crabtree* case, but were applied only as guides in applying the test of fundamental fairness. In the *Carroll* case the District Court was reversed on a finding of fact and the petitioner was granted immediate release by the Circuit Court.

The exact standard to test fundamental fairness has its perplexities. In the case of Meadows v. Boles, 255 F.Supp. 173 (N.D.W.Va.1966), this Court quoted the minimum requirement, as set forth in *Mounts,* and held, "that the failure of the state trial court to advise Meadows, in his complained of recidivist proceedings, of his 'right to admit, or to

deny, or remain silent and have the issue of his identity submitted to a jury,' deprived Meadows of the fundamental fairness to which he was entitled." 255 F. Supp. at 176.

Although the opinion in *Meadows* states, "This Court's conclusion is based on the fact that Meadows was not told that he could remain silent and receive a jury trial on the matter of identification," the warning given by the court only informed the person that the court would be required to sentence him to life imprisonment.[13] Therefore the actual deficiency in the warning was a failure to tell the defendant of his right to a jury trial on the issue of identification.

One of the desirable features of an absolute standard is that it provides the courts with an easy method of determining acceptable from nonacceptable conduct. However, the ease in applying a test should never override the reason for it, which in this case is fundamental fairness. Therefore, with the goal of fundamental justice to all parties in each case, and to insure that fundamental fairness is afforded in the circumstances of each case, and to prevent justice from being reduced from a science of human behavior to a ritual of semantics, this Court clarifies its earlier decision in Meadows v. Boles, in keeping with what appears to be the rule of this Circuit.

As noted above, the instant case is clearly distinguishable on the facts from the *Meadows* case and from the facts which existed in Jones v. Boles, 257 F. Supp. 293 (N.D.W.Va.1966).[14]

The contentions of this issue present the Court with directly opposite conclusions from which to make a determination in this litigation. To follow the absolute steps set out in *Mounts* would compel this Court to order Petitioner's release. To follow the fundamental fairness guide of *Crabtree* would require the Court to dismiss the instant petition.

13. "THE COURT: Before accepting your admission, I want to caution you that the effect of this will be an admission which will compel the Court to sentence you to life in prison. You understand that?"

14. The trial court asked only whether he, in fact, was the named defendant. 257 F.Supp. at 295.

■ This Court believes that the fundamental fairness, on the totality of the events, is the test that controls in this Circuit.

There is a very important reason for reaching this result. If the minimum standard, as first set out in *Mounts*, is equated to fundamental fairness, this would require uniform application of procedure in all the states of the Fourth Circuit, since analysis of the state trial court's record would be based upon a federal constitutional basis, rather than state requirements. If such were the case, then in every recidivist proceeding, regardless of statutory language, the defendant would have to be informed of his right to remain silent, to avoid a constitutional deprivation.

■ While such a warning as stated in *Mounts* may be preferable, failure to inform one of his right to remain silent in a case, with the facts present as we have them here, should not be considered a constitutional deprivation. This Court now holds, that although the Petitioner was not told he could remain silent and receive a jury trial as to his identity, the cautioning the Petitioner received in this case was not fraught with such fundamental unfairness as to constitute a deprivation of constitutional due process.