TALLMAN, Circuit Judge,
with whom
Circuit Judges BE A and IKUTA join, dissenting in part:
I join the majority opinion, but dissent as to parts III.A.2.d and III.B.4 because Dennis Wilenchik and Sheriff Joseph Arpaio are entitled to qualified immunity on Plaintiffs’ Fourteenth Amendment Equal Protection claims.
In order for Plaintiffs to make out a claim that Wilenchik and Arpaio selectively enforced the Arizona privacy ■ statute against The New Times in violation of Plaintiffs’ rights to equal protection, Plaintiffs must at a minimum allege that “similarly situated” parties “could have been prosecuted, but were not.” United States v. Armstrong, 517 U.S. 456, 469, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). In other words, they must allege that publishers of Arpaio’s personal information other than The New Times were similarly culpable under all three prongs of the Arizona privacy statute: (1) knowingly making available a public official’s personal information on the internet, where (2) dissemination of the information posed an “imminent and serious threat” to the safety of the public official or his immediate family, and where (3) the threat was “reasonably apparent” to the person making the information available. See Ariz. Rev. Stats. § 13-2401(A).[1]
Further, even if Plaintiffs successfully alleged a violation of their right to equal protection, Wilenchik and Arpaio are entitled to qualified immunity unless the right was “clearly established,” meaning that, at the time of the challenged conduct, “every ‘reasonable official would have understood’ ” that prosecuting The New Times and not prosecuting other publishers violated that right. Ashcroft v. Al-Kidd, — U.S. -, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In determining whether enforcement of the Arizona privacy statute only against The New Times violated Plaintiffs’ clearly established rights, this court must keep in mind that “[qjualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.” Id. at 2085.
I agree with the original panel, see Lacey v. Maricopa Cnty., 649 F.3d 1118, 1134-35 (9th Cir.2011), that, although Plaintiffs successfully pled that, like The New Times, other publishers made Arpaio’s personal information publicly available on the internet, thereby satisfying the first element of Arizona’s privacy statute, see Ariz. Rev. Stats. § 13-2401(A), they failed to allege that the dissemination by any other publisher posed a similar threat to Arpaio and his immediate family, see id. In the absence of any judicial construction of the Arizona privacy statute, a reason *944 able government official could believe that The New Times was more likely to have “pose[d] an imminent and serious threat” to Arpaio’s safety than the other publishers because The New Times drew attention to Arpaio’s home address in conjunction with strongly worded criticism, while the other websites merely included his address among hundreds of entries in an organizational list.
Further, with respect to the third prong of the statute, Plaintiffs do not deny they were aware of the death threats Arpaio had received when they published his address, instead insisting the threats posed no imminent threat to the Sheriff. Nowhere do Plaintiffs allege that the Maricopa County Recorder’s website, the Maricopa County Election Commissioner’s website, or the Republican Party’s website had similar knowledge of potential threats to Arpaio’s personal safety at the time they published his home address. Accordingly, Plaintiffs do not allege that these publishers were similarly culpable under the third prong of the Arizona privacy statute, which requires that the threat be “reasonably apparent” to the person making the information available.
The majority concludes that Plaintiffs need not allege that the other publishers were similarly culpable under the second and third prongs of the statute because, according to Plaintiffs’ allegations, The New Times publishers themselves were not guilty under these prongs. In essence, the majority holds that all the publishers were “similarly situated” because none of them violated the law. But the majority distorts the Armstrong test and our qualified immunity jurisprudence. As the Supreme Court recently reaffirmed, the reasonableness of a government official’s conduct must be judged from the official’s perspective at the time of the allegedly unconstitutional conduct, not “with the 20/20 vision of hindsight.” Ryburn v. Huff, — U.S. -, 132 S.Ct. 987, 992, 181 L.Ed.2d 966 (2012) (quoting Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)) (internal quotation marks omitted).
Prosecutors cannot know in advance of trial whether a suspect is guilty; rather, they must make the decision whether to investigate or bring charges based on the strength of the evidence known to them. They may turn out to be wrong in any given case, but so long as they are applying a neutral set of criteria such as “the strength of the case, the prosecution’s general deterrence value, the Government’s enforcement priorities, and the case’s relationship to the Government’s overall enforcement plan,” their decisions are generally immune from review. Armstrong, 517 U.S. at 465, 116 S.Ct. 1480 (quoting Wayte v. United States, 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985)) (internal quotation marks omitted). A plaintiff cannot prevail on a selective prosecution claim unless he or she can demonstrate that there were other individuals who were “similarly situated” in terms of these neutral factors who were not prosecuted. Only then is there an inference that the decision to prosecute was based on “an unjustifiable standard such as race, religion, or other arbitrary classification.” Id. at 464, 116 S.Ct. 1480 (quoting Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)) (internal quotation marks omitted). It is irrelevant whether the plaintiff was ultimately acquitted or, as here, charges were never brought.
In light of the limited allegations in the complaint, and the lack of any authoritative judicial construction of the Arizona privacy statute, Wilenchik and Arpaio could reasonably conclude that there was a stronger case that The New Times’s publishers knowingly posed a threat to Arpaio’s personal safety, and therefore that it *945 was reasonable to investigate only The New Times, rather than the other publishers. Regardless whether The New Times publishers turned out to be innocent or guilty, they were not similarly situated to the other publishers based on the facts known to the defendants, and Plaintiffs’ allegations cannot make it so. Under these circumstances, the defendants are entitled to qualified immunity.
The district court afforded Plaintiffs the opportunity to amend the complaint. Yet, Plaintiffs responded with few additional allegations and continued to opt for a writing style that reads like a newspaper article drafted by an investigative journalist, who leapt to conclusions without verifying the facts. Under Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court has explicitly demanded more from pleadings. We must be careful not to tread on important jurisprudence simply because the facts Plaintiffs do allege, but have yet to prove, are viewed as sympathetic.

. Ariz. Rev. Stats. § 13-2401(A) states:
It is unlawful for a person to knowingly make available on the world wide web the personal information of a peace officer, justice, judge, commissioner, public defender or prosecutor if the dissemination of the personal information poses an imminent and serious threat to the peace officer’s, justice’s, judge’s, commissioner’s, public defender’s or prosecutor’s safety or the safety of that person’s immediate family and the threat is reasonably apparent to the person making the information available on the world wide web to be serious and imminent.