**UNITED STATES**

v.

**Brian Patrick REGAN, Defendant.**

**No. CRIM. 01–405–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 10, 2002.

See, also, 221 F.Supp.2d 659.

Patricia M. Haynes, U.S. Attorney's Office, Alexandria, VA, for Plaintiff.

James Clyde Clark, Land, Clark, Carroll & Mendelson PC, Jonathan Shapiro, Law Office of Jonathan Shapiro, Nina J. Ginsberg, DiMuro Ginsberg & Mook PC, Joseph John McCarthy, Delaney McCarthy & Colton PC, Alexandria, VA, for Defendant.

### *MEMORANDUM ORDER*

LEE, District Judge.

THIS MATTER is before the Court on Defendant's "Motion to Strike the Notice of Intention to Seek the Death Penalty Because Seeking Death Here is Arbitrary and Irrational, Thus Violating Eighth Amendment Death Penalty Jurispru-

---

dence." The issue presented is whether the Court should strike the notice to seek the death penalty in this case where Defendant alleges that the harm he allegedly caused is distinctively less than the harm caused by ten other individuals who have been convicted of espionage and did not receive a sentence of death.

For the reasons stated in open court on August 8, 2002, and supplemented below, the Court holds that Defendant's Eighth Amendment challenge fails because he has not provided any evidence that the Government's decision to seek the death penalty in this case was based on an unjustifiable factor. The decision to seek the death penalty lies within the prosecutor's discretion and this decision will not be disturbed unless Defendant provides some evidence that it was based on an arbitrary classification. The Court also holds that Defendant does not have a constitutional right under the Eighth Amendment to proportionality review comparing the prosecutorial decision to seek the death penalty in his case to others indicted of the same crime. Accordingly, Defendant's motion is DENIED.

## I. BACKGROUND

### A. Charges against the Defendant.

On August 24, 2001, the Defendant was charged in a criminal complaint with attempted espionage against the United States of America in violation of 18 U.S.C. § 794. Defendant was subsequently indicted on the charge on October 23, 2001. The charges against Defendant in the original indictment basically alleged that Defendant abused his position in the intelligence community by attempting to sell top secret information to Iraq, Libya, and the People's Republic of China. Defendant served in the United States Air Force ("USAF") from August 1980 until August 31, 2000, retiring at the rank of Master Sergeant. During his tenure with the USAF, Defendant specialized in signals intelligence analysis. Specifically, from 1991 to 1994, Defendant worked at the Air Force Intelligence Support Group at the Pentagon targeting the communications systems of military adversaries of the United States and later as an Air Defense Analyst.

From July 1995 until August 31, 2000, Defendant was detailed to the headquarters of the National Reconnaissance Office ("NRO"). The NRO is responsible for building and operating the United States reconnaissance satellites. Defendant was assigned to the Signals Intelligence Applications Integration Office of the NRO, which is responsible for focusing signals intelligence support for tactically deployed military units. After leaving the USAF in August 2000, Defendant became employed by TRW Incorporated ("TRW"). In that capacity, he served as a contract employee to the NRO. In July 2001, Defendant began his TRW assignment at the NRO.

The original indictment alleged that beginning in mid–1999 Defendant accessed Intelink while at the NRO to obtain classified intelligence information relating to the military preparedness of Iran, Iraq, Libya, and China. Intelink is the United States Intelligence Community's classified version of the Internet, and it can be accessed only by persons with appropriate security clearance. In August 2001, the indictment alleges that Defendant again accessed Intelink while working for TRW on his NRO assignment. During the month of August, Defendant allegedly accessed and viewed classified information relating to military facilities in Iraq, Iran, Libya, and China, as well as classified documents relating to current United States intelligence collection capabilities against those nations. The indictment alleges that Defendant was subsequently arrested at Dulles International Airport on August 23, 2001, en route

to Europe. Defendant was apprehended with the addresses of the Chinese embassies in Bern, Switzerland, and Vienna, Austria, as well as the Iraqi embassy in Vienna and the Iraqi Interests Section in Paris, France.

On February 14, 2002, the Government filed a four-count superseding indictment against Defendant. The superseding indictment alleges three counts of Attempted Espionage under 18 U.S.C. § 794(a). The three counts charge Attempted Espionage with the intent to injure the United States and advantage Iraq (Count One), Libya (Count Two), and China (Count Three). The superseding indictment also charges a count of Gathering National Defense Information in violation of 18 U.S.C. § 793 (Count Four). Notably, the superseding indictment refers to the discovery of letters on Defendant's computer allegedly drafted by Defendant to high-ranking government officials of Iraq and Libya, including the countries' respective leaders, Saddam Hussein and Muammar Qadhafi. These letters offered to sell top secret information to Iraq and Libya, including information involving United States aircraft flying in the No–Fly Zone over Northern Iraq.

## B. The Death Penalty Notice and Defendant's Motion to Strike the Notice as Arbitrary.

On April 19, 2002, pursuant to the Federal Death Penalty Act, 18 U.S.C. §§ 3591–3598 ("FDPA"), the Government filed a notice of intent to seek the death penalty in this case. The notice alleges two statutory aggravating factors and twenty-four non-statutory aggravating factors, justifying the death penalty on Count One, Attempted Espionage with the intent to injure the United States and advantage Iraq, and Count Two, Attempted Espionage with the intent to injure the United States and advantage Libya. The two statutory aggravating factors set forth in the notice are (a) that "[i]n the commission of the offense the defendant knowingly created a grave risk of substantial danger to the national security," and (b) that "[i]n the commission of the offense the defendant knowingly created a grave risk of death to another person." 18 U.S.C. § 3592(b)(2)–(3). In light of the Supreme Court's decision in *Ring v. Arizona*, — U.S. ——, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the Government filed another superseding indictment on July 24, 2002, re-alleging Counts One through Four and including the two statutory factors set forth in the death penalty notice.

Defendant filed several motions seeking to strike the death penalty provisions of the superseding indictment and attacking the constitutionality of the FDPA on its face and as applied. Among the various motions filed, Defendant moves to strike the Government's death penalty notice on the grounds that the prosecutorial decision to seek the death penalty in this case is arbitrary and irrational in violation of the Eighth Amendment of the United States Constitution.

Defendant bases his contention on the alleged disparity between the Government's prosecution of his case and ten other individuals indicted for espionage since 1994, eight of whom were prosecuted in this District. None of these individuals faced the death penalty. Because Defendant's alleged conduct and harm pales in comparison to the conduct and harm inflicted by these ten other individuals indicted and convicted for espionage, Defendant claims that the Government's decision to seek the death penalty in this case is an arbitrary one. The Government responds that (1) Defendant has no constitutional right to proportionality review, *i.e.*, a comparison of his case to other espionage cases and (2) review of the Government's prosecutorial decision in this case would

require the Court to enter an area that is committed to the Executive Branch.

## II. DISCUSSION

### A. Prosecutorial Discretion.

As a general rule, so long as a prosecutor has reason to believe that the accused committed the offense defined by the relevant statute, the decision to prosecute and what charge to file lies squarely within the prosecutor's discretion. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir.1996). Prosecutors are allotted a wide degree of latitude because the myriad factors inherent to the decision to prosecute are ill-suited for judicial review. *Wayte v. United States*, 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). Substantial concerns such as examining the strength of the case, the Government's priorities, and the case's relationship to the Government's overall strategy render courts "properly hesitant to examine the decision whether to prosecute." *Id.* at 607–08, 105 S.Ct. 1524. *See also Olvis*, 97 F.3d at 744 (listing various legitimate factors that may play a role in a prosecutorial decision such as the strength of the evidence against a defendant or defendant's role in the offense).

Notwithstanding a prosecutor's broad discretion, the exercise of such power is ostensibly subject to constitutional constraints. *United States v. Batchelder*, 442 U.S. 114, 125, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) ("Selectivity in the enforcement of criminal laws is ... subject to constitutional constraints."). The Equal Protection Clause of the Due Process Clause of the Fifth Amendment demands that a prosecutorial decision cannot be based on an impermissible factor such as race, religion, or any arbitrary classification. *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *United States v. Has-*

*tings*, 126 F.3d 310, 313 (4th Cir.1997). The prosecution's power to seek the death penalty generally goes unquestioned unless there is an indication that the decision is based on an unjustifiable factor. "Absent facts to the contrary, it cannot be assumed that prosecutors will be motivated in their charging decision by factors other than the strength of their case and the likelihood that a jury would impose the death penalty if it convicts." *Gregg v. Georgia*, 428 U.S. 153, 225, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (White, J. concurring in judgment) (rejecting argument that Georgia's death penalty system was unconstitutional because it granted prosecutor's wide discretion to seek death penalty).

### B. Application to Defendant's Motion.

Defendant's motion to strike the death penalty notice on the grounds that the Attorney General's decision to seek a death sentence in this case is arbitrary is denied. Like any prosecutor, the Attorney General is charged with "broad discretion" in enforcing the nation's criminal laws. *United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). Courts are "properly hesitant" to examine prosecutorial decisions of the Attorney General, deferring to the relative competence of the Executive Branch. *Id.* at 465, 116 S.Ct. 1480.

Here, Defendant does not provide a valid reason for discarding the traditional deference owed to the Executive Branch. First, Defendant does not contend, nor could he, that the Government lacked probable cause to believe that a crime was committed. At the time of Defendant's arrest, the Government had evidence indicating that Defendant had obtained classified information relating to Iran, Iraq, Libya, and China. When Defendant was apprehended at the airport he had in his possession the addresses of the Chinese

and Iraqi embassies, a document with a description of technical training courses, and a computer disk addressed to an individual in Germany requesting information in offshore IBC and bank accounts. Second, Defendant does not argue that the decision to seek the death penalty against him was based on any arbitrary classification such as race or religion. The record clearly demonstrates that the decision to seek death in this case was based on the Attorney General's assessment of Defendant's actions and his review of the potential risk Defendant's conduct posed to the national security of the United States.

Defendant's contention that the Government's decision to seek death is arbitrary because in other espionage cases the Government declined to do so is legally meritless. While one may wonder why the Attorney General decided to pursue the death penalty in this case when the penalty was not sought in other seemingly more notorious espionage cases, the type of review sought of comparing the Attorney General's selection of cases is an area not suited for judicial review except in limited circumstances. The Defendant's factual arguments identify a rogues' gallery of convicted spies which includes some of the most notorious espionage cases in recent memory. The Defendant contends that the espionage activities of convicted spies Jim Clark, Theresa Squillacote, Kurt Stand, Douglas Groat, David Boone, Harold Nicholsen, Earl Pitts, Ana Montes, John Phillippe Wispelaere, and Robert Hansen involved far more damaging spy activities than that of Defendant Regan.[1] For instance, Robert Hanssen, a high-ranking Federal Bureau of Investigation official, spied for the Soviets/Russians for over two decades compromising an incredible amount of sensitive information concerning, among other things, satellite technology and nuclear weapons. In addition, Hanssen provided information to the Russians that the Government acknowledges led to the execution of several Soviet/Russian defectors. The Government did not seek the death penalty for Hanssen in part because he plead guilty and provided information to the authorities. In contrast, in this case, Regan is charged with attempted espionage and no deaths are alleged to have occurred.

Defendant basically asks the Court to exercise judicial review over the Executive Branch's core function of enforcing the laws of the United States that lies within the "special province" of the Attorney General. *See Armstrong,* 517 U.S. at 464–65, 116 S.Ct. 1480. For instance, Defendant would have the Court review the Government's files in each of the ten espionage cases identified by Defendant, assess the rationale for declining to seek the death penalty, and then review the factors relevant to the Attorney General's decision in seeking the death penalty here. The review sought by Defendant would necessarily inject the Judicial Branch into the decision-making process of the Executive, precisely the zone of governance that courts are "properly hesitant" to trespass. *Id.* at 465, 116 S.Ct. 1480. Absent allegations that the decision to seek the death penalty in this case is based on an unlawful factor, the Court cannot review the Attorney General's decision to seek the death penalty in this case.

Moreover, the judicial review Defendant seeks is similar to the proportionality review expressly rejected by the Supreme Court in *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). In *Pulley,* the defendant contended that the Constitution required judicial review of wheth-

---

1. It is critical to note that in eight of the cases cited, the defendants entered into plea bargain guilty pleas with the Government. Only Squillacote and Stand went to trial and were found guilty of non-capital offenses.

er the death penalty was unacceptable in a particular case because it was disproportionate to the punishment imposed on others convicted of the same crime. *Id.* at 43, 104 S.Ct. 871. The Court squarely rejected defendant's claim, holding that the Eighth Amendment did not "require[ ] a state appellate court, before it affirms a death sentence, to compare the sentence in the case before it with the penalties imposed in similar cases." *Id.* at 43–44, 104 S.Ct. 871.

Here, Defendant seeks proportionality review of the prosecutor's charging decision in his case. Defendant argues, without any legal authority, that the Constitution requires that the Court compare the Government's intention to seek death in his case to the Government's decision not to do so in ten other espionage cases. But following the logic in *Pulley*, Defendant does not have such a right under the Eighth Amendment. In fact, it would be inconsistent for a defendant to have a right to proportionality review at the charging stage and not have an equal right at the sentencing phase. In sum, Defendant's Eighth Amendment challenge fails because he does not provide any evidence that the Government's decision to seek the death penalty in this case was based on an unlawful consideration and because Defendant does not have a constitutional right to proportionality review.

### III. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendant's motion to strike the Government's notice of intention to seek death because seeking death here is arbitrary and irrational is DENIED.

The Clerk is directed to forward a copy of this Order to counsel.