El Juez Asociado Señor Rebollo López
emitió la opinión del Tribunal.
Luis E. Martínez Acosta es el presidente del Comité Municipal del Partido Independentista Puertorriqueño (PIP) en el municipio de Sabana Grande y el candidato a la alcaldía de dicho municipio por el PIP en las elecciones que han de celebrarse en Puerto Rico en noviembre de 2008. Este también fungió como candidato a alcalde del referido municipio por el PIP en las elecciones generales de 2004.
Según surge del expediente, el 7 de octubre de 2006 el agente Angel S. Ramos, de la Policía de Puerto Rico, inter-vino con Martínez Acosta, debido a que este último se encontraba pintando un mensaje alusivo al 60 Aniversario de la fundación del PIP en las paredes de un puente localizado en la Carretera Núm. 2, a la altura del municipio de Sabana Grande, en dirección de Mayagüez a Ponce. Ante ello, el agente Ramos expidió una citación contra Martínez Acosta por alegada infracción al Art. 209 del Código *279 Penal de 2004 (33 L.PR.A. sec. 4837), el cual tipifica como delito la fijación de carteles en propiedad pública.([1])
Posteriormente, el Tribunal de Primera Instancia, Sala Municipal de Sabana Grande, determinó causa probable para arresto. En la vista celebrada a esos efectos, el agente Ramos testificó que los puentes sitos en la Carretera Núm. 2 de Sabana Grande se encuentran pasquinados y pintados con mensajes alusivos a distintas instituciones comerciales y a otras colectividades políticas, entiéndase, el Partido Popular Democrático (PPD) y el Partido Nuevo Progresista (PNP). Testificó, además, que ni él ni ningún agente de la policía adscrito a su cuartel, nunca antes han citado a simpatizantes de las otras colectividades políticas ni a los representantes de las instituciones comerciales que han fijado carteles, pasquinado o pintado en el mismo lugar que Martínez Acosta lo hizo.
Luego de varios trámites procesales, Martínez Acosta planteó ante el Tribunal de Primera Instancia, Sala Superior de San Germán, que el proceso criminal en su contra era selectivo y discriminatorio. Solicitó que se pautara una vista separada para dirimir la procedencia de su defensa de procesamiento selectivo y que, previo a la vista, el tribunal autorizara un descubrimiento de prueba respecto a dicha defensa; específicamente, que el Ministerio Público le facilitara copia de las denuncias presentadas, si algunas, en los pasados cuatro años en la Región Judicial de Mayagüez por infracción al Art. 209 del Código Penal, ante; solicitó, además, copia de las autorizaciones que pudiera haber emitido el Departamento de Transportación y Obras Públicas para pasquinar o pintar en los puentes en cuestión.
*280 En apoyo a su solicitud, Martínez Acosta presentó como evidencia varias fotografías de los puentes, sitos en la Carr Núm. 2 en Sabana Grande, de las cuales surge que dichos puentes se encuentran pasquinados o pintados con propaganda política, tanto del PPD como del PNP, como con propaganda comercial. De igual forma, presentó el testimonio prestado por el agente Ramos en la vista de determinación de causa probable para arresto, del cual surge que no se han citado a otros manifestantes —políticos o comerciantes— que han pintado o pasquinado en los puentes de la Carretera Núm. 2 en Sabana Grande.
El Tribunal de Primera Instancia denegó la solicitud de Martínez Acosta. De dicha determinación, este último acudió —mediante un recurso de certiorari— ante el Tribunal de Apelaciones; adujo que el tribunal de instancia incidió al no concederle el descubrimiento de prueba y la vista evidenciaría solicitada, a pesar de que cumplió con el quantum de prueba necesario, entiéndase, “alguna prueba” tendente a establecer los elementos de la defensa de procesamiento selectivo. El Tribunal de Apelaciones denegó la expedición del recurso de certiorari. Concluyó que, mediante la prueba ofrecida, Martínez Acosta no había presentado un caso prima facie de procesamiento selectivo que lo hiciera acreedor al descubrimiento de prueba y a la vista evidenciaría solicitada.
Inconforme, Martínez Acosta acudió —mediante un recurso de certiorari— ante este Tribunal. Aduce que el Tribunal de Apelaciones erró al concluir que para obtener un descubrimiento de prueba y una vista evidenciaría sobre procesamiento selectivo es necesario establecer un caso prima facie, pues en la etapa inicial en que se encuentra su reclamo, el quantum de prueba necesario es “alguna prueba” tendente a establecer los elementos de la defensa de procesamiento selectivo.
El 18 de julio de 2007 expedimos el recurso y, en auxilio de nuestra jurisdicción, paralizamos los procedimientos ante el Tribunal de Primera Instancia, Sala Superior de San *281 Germán. Estando en posición de resolver el recurso, procedemos a hacerlo.
I
 El sistema republicano de gobierno, como el nuestro, se compone de tres ramas de gobierno, separadas e independientes, cada una con funciones distintas y específicas. Art. I, Sec. 2, Const. E.L.A., L.P.R.A., Tomo l.([2]) Es así como la Rama Legislativa tiene el deber de crear y aprobar leyes, la Rama Ejecutiva tiene el deber de ponerlas en vigor y la Rama Judicial tiene el deber de interpretarlas y de revisar la validez de las actuaciones de las otras dos ramas de gobierno.
En virtud de esta separación de poderes y en relación con la situación específica de hechos hoy ante nuestra consideración, hemos resuelto que la Rama Ejecutiva tiene amplia discreción al momento de decidir a quién encausa o contra quién insta una acción criminal. En palabras del Tribunal Supremo de Estados Unidos en Wayte v. United States, 470 U.S. 598, 607 (1985):
[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file ... generally rests entirely in his discretion.
This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecutor’s general deterrence value, the Government’s enforcement priorities, and the case’s relationship to the Government’s overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. Judicial supervision in this area, moreover, entails systemic costs of particular concern. Examining the basis of a *282 prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor’s motives and decision-making to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government’s enforcement policy. (Citas omitidas.)
Ello no obstante, lo antes expuesto no significa que la discreción de encausar concedida al poder ejecutivo sea absoluta o irrestricta, pues se encuentra sujeta a limitaciones constitucionales. “[Ajlthough prosecutorial discretion is broad, it is not ‘unfettered\ Selectivity in the enforcement of criminal laws is ... subject to constitutional constraints.” Wayte v. United States, ante, pág. 608.
Ya desde 1886, en Yick Wo v. Hopkins, 118 U.S. 356 (1886), el más alto Foro federal dispuso que la igual protección de las leyes constituye una limitación constitucional a la discreción del ejecutivo de encausar. En el referido caso, el Tribunal Supremo de Estados Unidos reconoció que la administración, desigual y opresiva, de las leyes por parte de las autoridades públicas y, por ende, del Estado, constituye una violación a la igual protección de las leyes consagrada en la Enmienda 14 de la Constitución de Estados Unidos.([3]) Al resolver así, el Tribunal Supremo federal expresó:
[t] hough the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between per *283 sons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution. Yick Wo v. Hopkins, ante, págs. 373-374.
Posteriormente, en Oyler v. Boles, 368 U.S. 448 (1962), el Tribunal Supremo de Estados Unidos limitó sus expresiones en Yick Wo v. Hopkins, ante, al establecer que el ejercicio consciente de selectividad al momento de encausar —por sí solo— no constituye una violación constitucional. Sólo aquella selectividad basada en estándares injustificables, tales como raza, religión o cualquier otra clasificación arbitraria configura una violación a la igual protección de las leyes.
Conforme a lo antes expuesto, aquel imputado que haya sido víctima de una selección discriminatoria por parte del Estado tiene a su haber la defensa de procesamiento selectivo. A grandes rasgos, el procesamiento selectivo “es materia de una defensa afirmativa a alegarse y probarse por el imputado en el foro de instancia, que conlleva establecer un efecto discriminatorio en la aplicación de la ley a su caso y que el proceso en su contra fue motivado por esas razones”. Pueblo v. Rexach Benítez, 130 D.P.R. 273, 280 (1992).
Para prevalecer en su reclamo —conforme a la jurisprudencia federal— el imputado debe presentar un caso prima facie de procesamiento selectivo, mediante prueba que establezca que: (1) personas similarmente situadas no han sido acusadas y que (2) la selección discriminatoria por parte del Ministerio Público ha sido intencional y de mala fe, basada en consideraciones no permitidas como raza, religión, afiliciación política o el ejercicio de derechos constitucionales protegidos, como la libertad de expresión. Véanse: Wayte v. United States, ante; La Fave, ante, Sec. 13.4(a), pág. 170.([4])
*284 Es decir, le corresponde al imputado probar que la selección por parte del Ministerio Público, al momento de encausar, tuvo un efecto y propósito discriminatorio. Una vez establecido un caso prima facie de procesamiento selectivo, el peso de la prueba se desplaza hacia el Estado, al cual le corresponde refutar la presunción de selectividad discriminatoria en el proceso, mediante prueba que establezca que la acusación del imputado no responde a razones no permitidas.
El quantum de prueba exigido para que un imputado prevalezca en su reclamo de procesamiento selectivo es riguroso. Dicha rigurosidad no sólo encuentra justificación en la amplia discreción concedida al ejecutivo en materia de encausamiento, sino también en la presunción de regularidad y corrección por parte del ejecutivo en el descargo de sus funciones. Véase United States v. Armstrong, 517 U.S. 456 (1996). “Because we presume that criminal prosecutions are undertaken in good faith, without intent to discriminate, the defendant bears the initial burden of demonstrating selective enforcement.” La Fave, Israel, King and Kerr, ante, Sec. 13.4(b), pág. 172.
Ahora bien, ¿significa esto que debe requerirse al imputado establecer un caso prima facie de procesamiento selectivo previo al momento de solicitar un descubrimiento de prueba y una vista evidenciaría sobre dicha defensa?
En 1996 el Tribunal Supremo de Estados Unidos resolvió el caso United States v. Armstrong, ante, en el que tuvo la oportunidad de expresarse respecto al “quantum” de prueba necesario para que proceda una solicitud de descubrimiento de prueba sobre la defensa de procesamiento selectivo. Al respecto, estableció que para ser acreedor a un descubrimiento de prueba, el imputado debe presentar “alguna evidencia” tendente a establecer los elementos de la defensa de procesamiento selectivo, entiéndase, efecto y *285 propósito discriminatorio. En específico, resolvió que “alguna evidencia” sobre el elemento de efecto discriminatorio significa presentar “prueba creíble” del tratamiento diferente entre personas similarmente situadas (“credible showing of different treatment of similarly situated persons”). ([5])
Aun cuando en United States v. Armstrong, ante, el Tribunal Supremo federal dispuso que el quantum de prueba para obtener un descubrimiento sobre la defensa de procesamiento selectivo es “alguna evidencia”, al requerir que como parte de ese quantum de prueba se presente “prueba creíble” sobre el trato distinto entre personas similarmente situadas, descartó las expresiones del Juez Marshall en su disenso en Wayte v. United States, ante.
En Wayte v. United States, ante, el Juez Marshall disintió debido a que la mayoría de los miembros del Tribunal Supremo federal procedió a resolver si la prueba presentada por el imputado era suficiente para prevalecer en su reclamo de procesamiento selectivo, mientras que la verdadera controversia se centraba en si la prueba presentada por el imputado era suficiente para concederle un descubrimiento de prueba sobre su defensa. Por su pertinencia, esbozamos a continuación algunas de las expresiones del Juez Marshall en el referido disenso:
[t]he Courts of Appeals have adopted a standard under which a defendant establishes his right to discovery if he can show that he has a colorable basis for a selective prosecution claim. To make this showing, a defendant must allege sufficient facts in support of his claim of selective prosecution claim ‘to take the question past the frivolous state.’
In general, a defendant must present some evidence tending to show the existence of the essential elements of the defense.
This standard ... is consistent with our exhortation that “[t]he need to develop all relevant facts in the adversary sys *286 tem is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts”.
It also recognizes that most of the relevant proof in selective prosecution cases will normally be in the Government’s hands. At the same time, the standard adequately protects the Government from attempts by the defense to seek discovery as a means of harassment or of delay.
To evaluate the merit of Wayte’s claim, I consider the elements of a prima facie case of selective prosecution and ascertain whether Wayte has made a nonfrivolous showing as to the existence of these elements. It is important to bear in mind at this stage that Wayte need not have made out a full prima facie case in order to be entitled to discovery. A prima facie case, of course, is one that if unrebutted will lead to a finding of selective prosecution. It shifts to the Government the burden of rebutting the presumption of unconstitutional action. But a defendant need not meet this high burden just to get discovery; the standard for discovery is merely nonfrivolousness.
To make out a prima facie case, Wayte must show first that he is a member of a recognizable, distinct class. Second, he must show that a disproportionate number of this class was selected for investigation and possible prosecution. Third, he must show that his selection procedure was subject to abuse or was otherwise not neutral. The inquiry then is whether Wayte has presented sufficient evidence as to each of the elements to show that the claim is not frivolous. (Citas omitidas y énfasis nuestro.) Wayte v. United States, ante, págs. 623-626.
Según se deduce del texto, el Juez Marshall era del criterio que el término “alguna evidencia” significa aquella prueba necesaria para establecer que el reclamo de procesamiento selectivo no es “frívolo”. Al exigir que —previo a un descubrimiento de prueba— el imputado presente “prueba creíble” sobre el trato diferente entre personas similarmente situadas, se le está exigiendo al imputado presentar prueba específica sobre un grupo control de personas similarmente situadas no encausadas, a pesar de que el imputado busca obtener la información de dicho grupo control mediante el descubrimiento de prueba solicitado.
*287 Este requisito, naturalmente, hace prácticamente imposible que la defensa de procesamiento selectivo pueda ser planteada con éxito, básicamente porque —como sostuvo el Juez Marshall en su disenso— de ordinario, la prueba con la cual el acusado puede probar su defensa está en posesión del Estado y si no se le permite al imputado descubrirla en la etapa de descubrimiento, nunca podrá presentarla. Dicho de otra manera, “[b]y requiring the defendant to produce specific evidence of an unprosecuted control group before granting discovery, the Court subjects the defendant to a ‘Catch 22’: the defendant needs discovery to obtain the information necessary to entitle the defendant to discovery”. A. Bowen Poulin, Prosecutorial Discretion and Selective Prosecution: Enforcing Protection after United States v. Armstrong, 34 (Núm. 3) Am. Crim. L. Rev. 1071, 1098 (Primavera 1997). Véase, además, M.L. Jampol, Goodbye to the Defense of Selective Prosecution, 87 (Núm. 3) J. Crim. L. Criminology 932 (Primavera 1997).
Por otro lado, resulta de particular importancia señalar que, en cuanto a la solicitud de una vista evidenciaría sobre la defensa de procesamiento selectivo, varias cortes de circuito federales, que han tenido la oportunidad de expresarse sobre el quantum de prueba necesario para obtenerla, han establecido un “quantum” de prueba más flexible.
A modo de ejemplo, podemos mencionar United States v. Saade, 652 F.2d 1126, 1135 (1er Cir. 1981), donde el Tribunal de Apelaciones de Estados Unidos para el Primer Circuito estableció:
[a] defendant need not... present a prima facie case in order to justify an evidentiary hearing. So long as the defendant alleges some facts (a) tending to show that he has been selectively prosecuted, and (b) raising a reasonable doubt about the propriety of the prosecutor’s purpose, a district court, in the absence of countervailing reasons, should grant a request for a hearing. (Citas omitidas y énfasis nuestro.) Véanse, además: U.S. v. Penagaricano-Soler, 911 F.2d 833 (1er Cir. 1990); U.S. v. Goldberg, 105 F.3d 770 (1er Cir. 1997).
*288 En términos similares se expresó la Corte de Apelaciones de Estados Unidos para el Noveno Circuito en United States v. Oaks, 508 F.2d 1403 (9no Cir. 1974), al establecer que procede una vista evidenciaría sobre procesamiento selectivo cuando el imputado ha alegado hechos suficientes de forma tal que la defensa rebase la etapa de frivolidad.
De la normativa antes expuesta podemos concluir que la jurisprudencia federal “divide” la defensa de procesamiento selectivo en varias etapas y que cada etapa requiere un quantum de prueba distinto para que el imputado prevalezca. En primer término, se encuentra la etapa de descubrimiento de prueba, en la cual el imputado deberá presentar “alguna evidencia” tendente a establecer los elementos de la defensa de procesamiento selectivo, lo cual, según establecido en United States v. Armstrong, ante, requiere, a su vez, que se presente “prueba creíble” o específica sobre el tratamiento disimilar entre personas similarmente situadas. En segundo término, se encuentra la etapa de vista evidenciaría, en la cual la parte deberá ale-gar hechos suficientes que demuestren duda razonable sobre el propósito del Ministerio Público al encausar o que lleven a que la defensa rebase la etapa de frivolidad. Por último, le corresponde al imputado probar la defensa de procesamiento selectivo en los méritos, para lo cual será necesario establecer un caso prima facie de procesamiento selectivo.
II
En Puerto Rico, el desarrollo jurisprudencial de la defensa de procesamiento selectivo ha sido sumamente limitado y la mayor parte de los pronunciamientos que tenemos a nuestra disposición sobre dicha defensa son aquellos expuestos por distintos miembros de este Tribunal en sus respectivas opiniones disidentes, concurrentes o de conformidad.
*289 En general, hemos expresado que “[l]a fiscalización o procesamiento criminal selectivo es materia de una defensa afirmativa a alegarse y probarse por el imputado en el foro de instancia”. Pueblo v. Rexach Benitez, ante, pág. 280. Esta requiere, a su vez, que el imputado establezca un efecto discriminatorio en la aplicación de la ley a su caso y que el proceso en su contra fue motivado por esas razones. Id.
La aplicación de la referida defensa a Puerto Rico no puede ponerse en duda, pues además del derecho a la igual protección de las leyes consagrado en la Enmienda 14 de la Constitución de Estados Unidos y en el Art. II, Sec. 7, de la Constitución del Estado Libre Asociado de Puerto Rico([6]) existen en nuestra Constitución preceptos que claramente prohíben que el Estado discrimine contra personas que están en circunstancias similares. A saber, el Art. II, Sec. 1, de nuestra Constitución establece que “todos los hombres son iguales ante la Ley” y que “[n]o podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas”. Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, pág. 252.

¿Qué estándar de prueba debemos requerir en nuestra jurisdicción para que un imputado prevalezca en su solicitud de descubrimiento de prueba y vista evidenciaría sobre la defensa de procesamiento selectivo?

Sabido es que en materia de derechos constitucionales, la Constitución del Estado Libre Asociado de Puerto Rico es de “factura más ancha” que la Constitución federal y que el derecho constitucional federal constituye solamente el ámbito mínimo que estamos obligados a reconocer. Es por ello que, al interpretar los contornos de nuestra Constitución, podemos utilizar una visión más *290 abarcadora y protectora, de manera que brindemos una protección aun mayor que la reconocida en el ámbito federal. Véase López Vives v. Policía de P.R., 118 D.P.R. 219 (1987).
 Con ese norte en mente, consideramos apropiado que en nuestra jurisdicción, al igual que han establecido las decisiones de varios tribunales federales de circuito —como el Primer Circuito de Boston— resulta procedente “dividir” dicha defensa en dos etapas, esto es, la etapa de descubrimiento de prueba —previa a la celebración del juicio— y la etapa del juicio en su fondo.
En la primera de ellas se requerirá del imputado de delito que, al plantear la defensa, presente “alguna evidencia” que sea suficiente para demostrar que su reclamo no es “frívolo”. Establecido esto, y conscientes de que en la mayor parte de los casos de evidencia pertinente para sostener un reclamo de procesamiento selectivo en los méritos está en poder del Estado,![7]) se le permitirá al imputado llevar a cabo un descubrimiento de prueba en busca de dicha evidencia.
En la segunda etapa, esto es, en la del juicio en su fondo, se le exigirá al imputado la presentación de “prueba creíble”, o específica, sobre el tratamiento disimilar entre personas similarmente situadas, según enunciado en United States v. Armstrong, ante.
No podemos perder de vista que el estándar de prueba enunciado por el Tribunal Supremo federal tiene el efecto de fusionar los requisitos para el descubrimiento de prueba con los requisitos para probar la defensa en sus méritos.([8]) *291 Por ello, si adoptamos en nuestra jurisdicción el estándar más riguroso establecido en United States v. Armstrong, ante, estaríamos convirtiendo en letra muerta la defensa de procesamiento selectivo y, para todos los efectos prácticos, estaríamos abdicando “sub silentio” a nuestra función revisora de las actuaciones de la Rama Ejecutiva y, sobre todo, nuestra función de velar por que los ciudadanos de nuestro País gocen de la protección de los derechos constitucionales involucrados.
Reconocemos que la rigurosidad del estándar de prueba necesario para que prospere la defensa de procesamiento selectivo en los méritos tiene su razón de ser, pero no vemos razón de envergadura para imprimirle dicha rigurosidad a la etapa de descubrimiento de prueba; más cuando existen métodos para proteger la información confidencial en ma-nos del ejecutivo como, por ejemplo, la inspección en cámara por parte del juez que presida la vista evidenciaría.
Imprimirle tanta rigurosidad a la etapa de descubrimiento de prueba implicaría, a su vez, depender a ciegas de la presunción de buena fe que recae sobre las actuaciones del ejecutivo. Ello, ciertamente, sería brindarle muy poca protección a los ciudadanos respecto a los derechos constitucionales aquí involucrados.![9]) Después de todo,
[s] elective prosecution should not fall outside the system of checks and balances simply because prosecutors are constitutionally presumed to act in good faith. Otherwise, the system of checks and balances fails to restrain the executive branch from overreaching its authority. Courts should exercise their authority to ensure that equal protection extends to every citizen by carefully and intelligently weighing all the circumstances surrounding a particular case. Discovery places courts in the best position to formulate this balance by permitting facts that underlie the decision to charge to surface.([10])
*292 En fin, el estándar que hoy adoptamos para las solicitudes de descubrimiento de prueba, no sólo evita que se sujete al imputado a un estado de indefensión requiriéndole de antemano que presente evidencia que sólo puede obtener mediante el descubrimiento de prueba, sino que también facilita el ejercicio del deber de la Rama Judicial de detectar y actuar sobre actuaciones discriminatorias del ejecutivo. A fin de cuentas, el encausamiento selectivo y discriminatorio no sólo causa daño a los individuos involucrados, sino también al sistema judicial de nuestro País.
III
En el caso hoy ante nuestra consideración, el Tribunal de Apelaciones resolvió que Martínez Acosta no tenía derecho a un descubrimiento de prueba ni a una vista evidenciaría sobre su defensa de procesamiento selectivo, debido a que, mediante la prueba presentada, éste no estableció un caso prima facie de procesamiento selectivo. No le asiste la razón.
Como recordaremos, contra Martínez Acosta se instó una acción criminal por infracción al Art. 209 del Código Penal, ante, por éste pintar propaganda alusiva al PIP en las paredes de un puente sito en la Carretera Núm. 2 en Sabana Grande. Posteriormente, Martínez Acosta planteó ante el Tribunal de Primera Instancia que el encausamiento en su contra fue selectivo y discriminatorio, por lo cual, solicitó que se autorizara un descubrimiento de prueba sobre la defensa y que se pautara una vista separada para dirimirla. En apoyo a su solicitud, presentó como evidencia varias fotografías de los puentes sitos en la Carretera Núm. 2 en Sabana Grande, de las cuales surge que dichos puentes se encuentran pasquinados o pintados con propaganda tanto del PPD y del PNP, como de propaganda comercial. Presentó, además, el testimonio prestado por el agente Ramos en la *293 vista de determinación de causa probable para arresto, del cual surge que no se han citado a otros manifestantes —políticos o comerciales— que han pintado o pasquinado en los ’ puentes de la Carretera Núm. 2 en Sabana Grande.
De los hechos y de la evidencia antes esbozada surge que Martínez Acosta es un reconocido militante del PIP en el pueblo de Sabana Grande, tanto, que ha sido y es el candidato a la alcaldía de dicho municipio por el PIP y es el Presidente del Comité Municipal de dicho partido político. De igual forma, surge que manifestantes de otras colectividades políticas, incluso entes privados con motivos comerciales, han cometido la misma infracción que Martínez Acosta y que éstos no han sido procesados.

De ello se deduce claramente que el reclamo de Martínez Acosta no es frívolo y que existe la posibilidad de que en el encausamiento de Martínez Acosta hayan mediado motivaciones discriminatorias por razón de afiliación política o, incluso, por rechazo al mensaje político que éste pretendía anunciar.

¿Por qué la acción contra Martínez Acosta y no contra otros militantes políticos de otros partidos que han utilizado las paredes de los puentes en cuestión para anunciar sus aspiraciones políticas o brindar mensajes alusivos a los ideales de sus partidos? Esto es, precisamente, lo que el tribunal está obligado a determinar mediante la consideración efectiva del reclamo de Martínez Acosta, luego de autorizar el descubrimiento de prueba solicitado y dirimir la defensa mediante una vista evidenciaría.
En fin, en la etapa temprana en que se encuentra el caso de Martínez Acosta, la evidencia presentada por éste es suficiente para determinar que su reclamo no es frívolo, pues demuestra la posibilidad real de que existen personas similarmente situadas no encausadas. Es nuestro deber constitucional permitir que se indague sobre la reclamación de Martínez Acosta, pues, de lo contrario, podríamos estar avalando una actuación inconstitucional por parte del Poder Ejecutivo.
*294 En fin, consideramos que Martínez Acosta cumplió con el estándar de prueba de “no frivolidad” y que, por lo tanto, es acreedor tanto al descubrimiento de prueba como a la vista evidenciaría solicitada.
IV
En mérito de lo antes expuesto, procede decretar la revocación de las sentencias recurridas y devolver el caso al Tribunal de Primera Instancia, Sala Superior de San Germán, para la continuación de los procedimientos en conformidad con lo aquí expuesto.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión disidente, a la cual se unió el Juez Presidente Señor Hernández Denton.

(1) El Art. 209 del Código Penal dispone que “[t]oda persona que pegue, fije, imprima o pinte sobre propiedad pública, excepto en postes y columnas, o sobre cualquier propiedad privada sin el consentimiento del dueño, custodio o encargado, cualquier aviso, anuncio, letrero, cartel, grabado, pasquín, cuadro, mote, escrito, dibujo, figura o cualquier otro medio similar, sin importar el asunto, artículo, persona, actividad, tema, concepto o materia a que se hace referencia en los mismos, incurrirá en delito menos grave. El tribunal podrá imponer también la pena de restitución”. 33 L.P.R.A. see. 4837.

(2) Dicho artículo dispone que “[e]l gobierno del Estado Libre Asociado de Puerto Rico tendrá forma republicana y sus Poderes Legislativo, Ejecutivo y Judicial, según se establecen por esta Constitución, estarán igualmente subordinados a la soberanía del Pueblo de Puerto Rico”. Art. I, Sec. 2, Const. E.L.A., L.P.R.A., Romo 1, ed. 1999, pág. 256.

(3) La Enmienda 14 de la Constitución de Estados Unidos prohíbe que un estado le niegue la igual protección de las leyes a una persona dentro de su jurisdicción. A pesar de que no existe una disposición similar en dicha Constitución dirigida al Gobierno federal, se entiende que la Enmienda 5 sobre el debido proceso de ley impone iguales limitaciones al Gobierno federal. 4 La Fave, Israel, King and Kerr, Criminal Procedure 3rd Sec. 13.4, pág. 168 (2007). “The equal protection guarantee applies to both the state and federal governments although the restrictions have two totally distinct bases. The equal protection clause of the Fourteenth Amendment by its own terms applies only to state and local governments. There is no equal protection clause that governs the actions of the federal government, and the Court has not attempted to make the clause itself applicable to federal acts. However, if the federal government classifies individuals in a way which would violate the equal protection clause, it will be held to contravene the due process clause of the Fifth Amendment.” 3 Rotunda & Nowak, Treatise on Constitutional Law: Substance and Procedure, Sec. 18.1, pág. 206 (1999).

(4) “[T]he three essential elements of a discriminatory prosecution claim [are]: (1) that other violators similarly situated are generally not prosecuted; (2) that the *284 selection of the claimant was ‘intentional or purposeful’; and (3) that the selection was pursuant to an ‘arbitrary classification’.” (Citas omitidas.) La Fave, Israel, King and Kerr, ante, Sec. 13.4(a), pág. 170.

(5) El Tribunal Supremo de Estados Unidos también resolvió que la Regla 16 de Procedimiento Criminal Federal, la cual regula el descubrimiento de prueba a favor de un acusado, no aplica a las solicitudes de descubrimiento de prueba sobre la defensa de procesamiento selectivo.

(6) El Art. II, Sec. 7, de nuestra Constitución dispone, en lo pertinente, que “[n]inguna persona será privada de su libertad o propiedad sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes”. Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, pág. 280.

(7) “In many cases, without access to law enforcement information through discovery, the defendant can neither confirm nor refute the belief that there is an unprosecuted control group.” A.B. Pouling, Prosecutorial Discretion and Selective Prosecution: Enforcing Protection after United States v. Armstrong, 34 (Núm. 3) Am. Crim. L. Rev. 1071, 1101 (Primavera 1997).

(8) M.L. Jampol: “Fearing an encroachment on the Executive Branch’s Power, the Supreme Court in Armstrong adopted a very high threshold for obtaining discovery in selective prosecution defenses. The effect of this high threshold is to practically merge the requirements for obtaining discovery in a selective prosecution claim with the threshold for proving such a claim on the merits.”

(9) Poulin, ante, pág. 1091: “Relying exclusively on the ‘diligence and good faith’ of the executive branch would leave too little protection for this recognized constitutional right.”

(10) M. A. Love, United States v. Armstrong: The Supreme Court formulates a discovery standard for selective prosecution claims, 7 Temple Pol. and Civ. Rights L. Rev. 191 (Otoño 1997).