BYBEE, Circuit Judge,
concurring in part and dissenting in part:
This case concerns an investigation initiated by “America’s toughest sheriff,” Joseph Arpaio, against his political enemies in the local news media. In the words of *1139 Arpaio’s own director of legal affairs, Arpaio had targeted the Phoenix New Times because the paper had been “historically anti-Arpaio.” Arpaio’s excuse for demanding prosecution of the Phoenix New Times was that its decision to post Arpaio’s home address on its website allegedly violated an obscure Arizona statute that prohibits dissemination of a law enforcement officer’s “personal information,” if doing so would pose an “imminent and serious threat” to the officer or his family, and such threat is “reasonably apparent” to the publisher. Ariz. Rev. Stat. § 13-2401(A). Never mind that Arpaio’s address was already publicly available through numerous other websites, including the websites of Maricopa County and the local Republican Party. Despite this and the fact that no one had ever been prosecuted under the statute, Arpaio used his considerable political clout in an attempt to pressure various prosecutors into charging the Phoenix New Times. After years of investigation, two different County Attorneys found no grounds for prosecution and refused to cave into Arpaio’s demands. Undeterred, Arpaio eventually managed to persuade Maricopa County Attorney Andrew Thomas to appoint Dennis Wilenchik as special prosecutor to investigate the Phoenix New Times. When Wilenchik issued subpoenas to the Phoenix New Times, the paper responded by publicizing the content of the subpoenas. Arpaio obliged by ordering the arrest, without a warrant, of Phoenix New Times publishers Michael Lacey and Jim Larkin for violating Arizona’s grand jury secrecy laws. The only problem was that no grand jury had ever been empaneled. Thus, the subpoenas were invalid ab initio.
Accepting the Plaintiffs’ version of the facts — which at this stage of the litigation we must — this is a sordid tale of abuse of public office. Nevertheless, despite the complaint’s detailed allegations of reprehensible conduct, the majority concludes that Arpaio is entitled to qualified immunity on the grounds that Plaintiffs failed to. adequately plead that Arpaio was personally involved in the arrests. Since the complaint details Arpaio’s extensive involvement in the alleged violations of Plaintiffs’ clearly established constitutional rights, I respectfully dissent from the majority’s conclusion that Arpaio is entitled to qualified immunity. I also respectfully dissent from the majority’s conclusion that Special Prosecutor Wilenchik is not liable for selective prosecution, because the complaint shows that Wilenchik targeted the Phoenix New Times for publicizing Arpaio’s home address while deliberately disregarding the fact that numerous other websites had done the same. I concur in the remainder of the majority’s opinion.[1]
*1140 I
The majority concludes that the complaint’s allegations are “too insubstantial to sustain a § 1983 claim” under the First, Fourth, and Fourteenth Amendments. Maj. Op. at 1136. At this stage of the proceedings, however, Plaintiffs need not prove anything to overcome Arpaio’s assertion of qualified immunity. They need only “plead sufficient factual matter to show that” Arpaio acted “for the purpose of’ violating Plaintiffs’ constitutional rights. Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1948-49, 173 L.Ed.2d 868 (2009). We must accept all factual allegations in Plaintiffs’ complaint as true and construe the complaint in the light most favorable to Plaintiffs. Shanks v. Dressel, 540 F.3d 1082, 1084 n. 1 (9th Cir.2008). The action may proceed if the facts in the complaint “allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” Iqbal, 129 S.Ct. at 1949.
Although the factual allegations in the complaint are quite detailed, the remainder of the complaint was not drafted in anticipation of Iqbal. Nevertheless, even under Iqbal, Plaintiffs have alleged sufficient facts to sustain their claims. First, the complaint makes clear that Arpaio never had grounds for investigating Plaintiffs for violation of the Arizona privacy statute. Although Plaintiffs had published Arpaio’s home address on its website, the statute prohibits publication only when it is “reasonably apparent” that doing so would pose an “imminent and serious threat” to Arpaio or his immediate family. Ariz. Rev. Stat. § 13-2401(A). The complaint plainly alleges that Arpaio’s home address was already publicly available, and that therefore it could not have been “reasonably apparent” to Plaintiffs that publicizing the address on the Phoenix New Times’s website would pose any additional threat to Arpaio or his family. Plaintiffs further point out that Arpaio himself never felt imminently threatened by publication of his address, because he waited nearly one year before asking prosecutors to investigate.[2] First Amd. Compl. at 11-12. The complaint also cites various reports from prosecutors in the Pinal County Attorney’s office noting that the case lacked merit precisely because there was no evidence that publication posed an “imminent and serious threat” to Arpaio. Id. at 12-13.
Second, the complaint plainly charges that Arpaio had no basis for ordering Plaintiffs’ arrest. Plaintiffs were never charged or arrested for violating the Arizona privacy statute. Instead, they were arrested for publicizing the content of subpoenas issued as part of Special Prosecutor Wilenchik’s investigation. Although it is a misdemeanor in Arizona to publicize the contents of a grand jury proceeding, including subpoenas, see Ariz. Rev. Stat. § 13-2812(A), no grand jury had ever been empaneled, and, as Wilenchik and Arpaio knew, the subpoenas were therefore never valid.
Despite these detailed factual allegations, the majority remarkably concludes that Plaintiffs’ claims fail for want of “specific factual allegations,” Maj. Op. at 1137, including “facts suggesting that Arpaio ... was closely connected to the arrests,” id. at 1136. In particular, the majority emphasizes that the complaint “failed to allege facts showing Arpaio personally knew the subpoenas could not support a violation of the grand jury secrecy statute.” Id. I question whether the majority’s conclusion is well-grounded in either law or fact. As to law: The majority’s focus on whether *1141 Plaintiffs pled specifics about Arpaio’s internal thought processes on the subpoenas effectively demands that plaintiffs in § 1983 officer suits plead with a heightened level of specificity — -a demand that neither we nor the Supreme Court have ever imposed. As the Supreme Court stated in Iqbal, all that is required at the pleading stage is sufficient facts to permit us “to draw the reasonable inference that the defendant is liable for the misconduct alleged.” 129 S.Ct. at 1949. Nowhere has the Supreme Court or this court ever referred to the majority’s undefined “specificity” standard.
The majority correctly lists the two avenues under Hansen v. Black, 885 F.2d 642 (9th Cir.1989), through which a supervisory officer may be liable in a § 1983 suit: (1) if the officer was “personally] involve[d] in the constitutional deprivation,” or (2) if there exists “a sufficient causal connection between the supervisor’s wrongful conduct and the constitutional violation.” Id. at 646. But after erroneously concluding that there was no “personal involvement” by Arpaio in the episode, the majority fails to offer any analysis of why Arpaio is not liable under the second prong.
As to fact: Applying the Iqbal and Hansen standards to Arpaio’s conduct, Plaintiffs have pled sufficient facts to permit us to infer that Arpaio was personally involved, and that his conduct set into motion a chain of events that he should have known would lead to the wrongful arrests. Plaintiffs allege that Arpaio had demanded that the County Attorney prosecute the Phoenix New Times despite no cause for believing that Plaintiffs had violated the Arizona privacy statute. First Amd. Compl. at 9-11. Attached to the complaint is a letter written by Arpaio’s own legal director, Ron Lebowitz, acknowledging that Arpaio was targeting the Phoenix New Times, but not the other websites that had also publicized Arpaio’s home address, because the paper had been “historically anti-Arpaio,” had the “purpose [of] destroying] the Sheriffs career,” and had published “articles against the Sheriff, using language that is inflammatory, insulting, vituperative, and the like.” First Amd. Compl., Ex. 1, at 8. Plaintiffs further allege that after failing to persuade the Pinal County Attorney to prosecute the case, Arpaio managed to persuade Maricopa County Attorney Andrew Thomas to hire Wilenchik as special prosecutor. First Amd. Compl. at 15, 18. Although Arpaio denied ordering the arrests, Wilenchik “has publicly claimed the arrests were conducted, authorized, approved, and/or directed by Arpaio and/or his aides.” Id. at 24-25. Further, “Wilenchik’s staff admits that they advised the Sheriff with respect to the arrests.” Id. at 25. Finally, ‘Wilenchik’s former partner, William French, ... confirmed that Wilenchik did indeed authorize and advise Arpaio to conduct the arrests.” Id.
The existence of such substantial factual disputes should normally weigh against granting a motion to dismiss. Instead, the majority expresses frustration with the dueling narratives cited in the complaint, complaining that Plaintiffs “ha[ve] forced ... this court ... to try to figure out who did what.” Maj. Op. at 1136. But that is beside the point. Our job at this stage of the litigation is not to engage in factfinding or to determine whose version of the facts to believe. That is the purpose of discovery and trial. For now, we must accept Plaintiffs’ version of the facts as true. See Shanks, 540 F.3d at 1084 n. 1.
Reading the facts in the light most favorable to Plaintiffs, it is more than reasonable to infer that Arpaio had acted with intent to violate Plaintiffs’ constitutional rights. Even if Arpaio did not physically participate in Plaintiffs’ arrests, there *1142 surely is an allegation of “a sufficient causal connection between [Arpaio’s] wrongful conduct and the constitutional violation.” Hansen, 885 F.2d at 646.
I would allow the action to proceed against Arpaio.
II
With respect to Special Prosecutor Wilenchik’s liability, I agree with the majority that Wilenchik is not entitled to qualified immunity for the alleged First and Fourth Amendment violations. I disagree, however, with the majority’s conclusion that Plaintiffs are barred from pursuing their claim for selective prosecution under the Fourteenth Amendment against Wilenchik.
To make a claim for selective prosecution, Plaintiffs must establish (1) that similarly situated persons were not prosecuted, and (2) that the defendants were motivated by a discriminatory purpose. See Rosenbaum v. City & Cnty. of S.F., 484 F.3d 1142, 1152-53 (9th Cir.2007). For Plaintiffs to proceed past a motion to dismiss on this claim, they need only produce “some evidence that similarly situated defendants ... could have been prosecuted, but were not.” United States v. Arenas-Ortiz, 339 F.3d 1066, 1068 (9th Cir.2003) (internal quotation marks omitted). Here, the complaint alleges that other websites that published Arpaio’s home address, such as the websites of Maricopa County and the local Republican Party, were similarly situated to the Phoenix New Times, but were not prosecuted. First Amd. Compl. at 11-12, 33.
The majority faults the Plaintiffs because the complaint fails to allege that publication on the other websites “posed similar threats to Arpaio and his family.” Maj. Op. at 1134. But this factor would be relevant only if we accept the Wilenchik’s factual assertion that publication on the Phoenix New Times’s website posed an “imminent and serious threat” to Arpaio or his family in the first place. In the complaint, which we must accept as true, Plaintiffs repeatedly emphasize that there was never any evidence suggesting that the publication of Arpaio’s address — by either the Phoenix New Times or by any of the other websites which had published the same information — ever posed an “imminent and serious threat” to Arpaio. See First Amd. Compl. at 10 (“There was no evidence that Arpaio was then, or ever, under any credible threat of ‘imminent harm’ as a result of the publication of his home address on The New Times web site.”); id. at 11 (“Arpaio, himself, obviously did not feel any ‘imminent’ threat from the ... article, because he was content to wait for many months before requesting any investigation.... In fact, Arpaio has continued, to this day, to publicize and publish his home address to citizens and the public at large.”). Because we can reasonably infer from Plaintiffs’ well-pleaded facts that publication of Arpaio’s address by both the Phoenix New Times and the other websites never posed any threat to Arpaio, Plaintiffs do not need to allege that publication by the other websites posed an “imminent and serious threat” in order to show that the other websites were similarly situated.[3]
Even worse, the majority takes it upon itself to decide not only that the Phoenix *1143 New Times posed a threat to Arpaio and his family, but that the other websites did not pose a threat. Thus, the majority finds for itself (on an appeal from a motion to dismiss) that “highlighting a controversial figure’s address — and no one else’s — is fundamentally very different than burying his address in an organizational list potentially containing scores of entries.” Maj. Op. at 1135. The majority concludes, again on its own authority, that “the mere fact that multiple websites published Arpaio’s address does not mean every website posed similar threats.” Id. Finally, the majority applauds the very First Amendment deprivation claimed by the plaintiffs: the majority finds that the Phoenix New Times “posed an especially serious threat to [Arpaio’s] safety” precisely because it had used “inflammatory, insulting, [and] vituperative” language in its articles criticizing Arpaio. Id. at 1135 n. 8 (quoting Arpaio’s director of legal affairs, Ron Lebowitz). Accordingly, the majority concludes, it was proper for Wilenchik to prosecute the Phoenix New Times alone because it alone “posed a threat to Arpaio.” Id. at 1135. In my view, the majority’s analysis only confirms that Plaintiffs should have their opportunity to prove that publication of Arpaio’s address posed no imminent threat to him and that Wilenchik’s decision to single out the Phoenix New Times was a poorly disguised effort to silent Arpaio’s critics.
Since I believe Plaintiffs have adequately alleged that Wilenchik failed to prosecute similarly situated entities and did so with discriminatory purpose, I would reverse the district court’s grant of qualified immunity as to this claim.
Ill
Although the Supreme Court has retired the liberal no-set-of-facts standard that we traditionally applied when considering motions to dismiss, see Iqbal, 129 S.Ct. at 1944; Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 562-63, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), that does not give us license to disregard factual allegations in a complaint as we see fit. But in dismissing Plaintiffs’ selective prosecution claim against Wilenchik, the majority relies on a version of the facts that is contrary to the factual allegations in the complaint. The majority also ignores the Supreme Court’s admonishment in Iqbal against requiring plaintiffs to plead “detailed factual allegations” in order to proceed past a motion to dismiss. 129 S.Ct. at 1949 (“[T]he pleading standard Rule 8 announces does not require ‘detailed factual allegations,’ but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.” (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955)). Yet by dismissing Plaintiffs’ complaint against Arpaio for failure to plead sufficient details of Arpaio’s personal involvement and mental state in this unfortunate episode, the majority has raised pleading standards well beyond what we or the Supreme Court have ever required.
For the foregoing reasons, I respectfully dissent on the issue of Arpaio’s liability as to all constitutional claims. I also respectfully dissent on the issue of Wilenchik’s liability for selective prosecution.

. The complaint also claims that, after this lawsuit was filed, "Arpaio mailed out Partisan Nomination Petitions, asking citizens to reelect him for Sheriff and publicizing his home address on the Petition.” First. Amd. Compl. at 11.

. Plaintiffs also have alleged sufficient facts to show that Wilenchik acted with discriminatory purpose. The invalid subpoenas, as summarized in the complaint, sought any materials in Plaintiffs’ possession, including confidential sources, relating to any news article “that was critical of Sheriff Arpaio.” First Amd. Compl. at 19. This fact alone is sufficient to permit one “to draw the reasonable inference" that Wilenchik acted with the purpose to discriminate against Plaintiffs on the basis of their “anti-Arpaio” views. Iqbal, 129 S.Ct. at 1949.